The PEOPLE of the State of
Colorado, Complainant,

v.

Marilyn Biggs ADKINS, Respondent.

No. 00PDJ095.

Office of the Presiding Disciplinary Judge
of the Supreme Court of Colorado.

Aug. 20, 2001.

Attorney Regulation. The Presiding Disciplinary Judge and Hearing Board disbarred the Respondent, Marilyn Biggs Adkins, from the practice of law. Adkins violated Colo. RPC 1.15(a) by failing to hold a client's property in her possession separate from her own property, and Colo. RPC 8.4(c) by knowingly converting funds belonging to the estate. Adkins was ordered to pay the costs of the proceedings.

Opinion issued by the Presiding Disciplinary Judge, ROGER L. KEITHLEY, and Hearing Board members BARBARA WEIL GALL and RICHARD P HOLME, both members of the bar.

## OPINION AND ORDER IMPOSING SANCTIONS

### SANCTION: ATTORNEY DISBARRED

A trial in this matter was held on August 9, 2001 before the Presiding Disciplinary Judge ("PDJ") and Hearing Board members Richard P. Holme and Barbara Weil Gall, both members of the bar. Gregory G. Sapakoff represented the People of the State of Colorado (the "People"). Craig L. Truman represented the respondent Marilyn Biggs Adkins ("Ms.Adkins") who was also present.

The Complaint in this action was filed June 13, 2001. Ms. Adkins filed an Answer admitting the factual allegations of the Complaint. On May 31, 2001, the People filed a Motion for Judgment on the Pleadings. Ms. Adkins filed a response stating she had no objection or defenses to the claims in the Complaint. On July 11, 2001, the PDJ granted the People's Motion. Thus, the facts and the violation of the alleged provisions of the Colorado Rules of Professional Conduct were established and are uncontested.

The PDJ and Hearing Board heard argument of counsel, reviewed the facts and alleged violations of the Complaint, and determined the following findings of fact by clear and convincing evidence.

### I. FINDINGS OF FACT

Marilyn Biggs Adkins has taken and subscribed the oath of admission, was admitted to the bar of this court on October 19, 1982,

and is registered upon the official records of this court, registration no. 12134.

In early 1999, Ms. Adkins was retained by Janet Cloe Mathias to represent her in her capacity as personal representative of the estate of W. Imojean Fuller, deceased, in Jefferson County District Court, Case No. 99PR204. At Ms. Adkins' direction, Ms. Mathias took an inventory of the estate's personal property, much of which was sold by the estate. Ms. Adkins assisted Ms. Mathias in selling the principle asset of the estate, a condominium. Ms. Adkins deposited the proceeds from the sale of the estate assets into a separate account at Enterprise Bank in the name of the Estate of Imojean Fuller. Ms. Adkins arranged for all statements for the account at Enterprise Bank to be sent to her office address, and Ms. Adkins was the only authorized signatory on the account.

Estate funds totaling between $130,000 and $140,000 were deposited into the account at Enterprise Bank by Ms. Adkins. Ms. Adkins knew that all of the funds deposited into the account at Enterprise Bank were funds belonging to the Estate of Imojean Fuller. Ms. Adkins knew that the funds on deposit at Enterprise Bank did not belong to her or to her law firm, Adkins & Associates. As of the beginning of October 1999, all of the funds belonging to the Estate of Imojean Fuller were still on deposit in the account at Enterprise Bank.

During the month of October 1999, Ms. Adkins wrote several checks from the estate account at Enterprise Bank payable to her law office COLTAF account. These checks were for substantially the entire balance on deposit in the Fuller Estate account at Enterprise Bank. After Ms. Adkins deposited the funds belonging to the Fuller Estate into her law office COLTAF account, she transferred the funds out of the COLTAF account and into the general operating account for her law firm, Adkins & Associates. Thereafter, she used all of the funds belonging to the Fuller Estate to pay her law firm's operating expenses and/or for her own benefit. Ms. Adkins did not advise Ms. Mathias of her actions in advance, nor was she authorized by Ms. Mathias or anyone else with authority to take money out of the estate account for any purpose. While Ms. Adkins utilized funds

belonging to the Fuller Estate, the estate proceedings in the Jefferson County District Court remained open, pending the completion of additional paperwork required to close the estate and disburse funds.

In late 1999, Ms. Adkins began the process of forming a new professional corporation with attorneys Thomas D. Smart, Jonathan S. Willett and David A. Mestas. The newly-formed firm was known as Adkins, Smart, Willett & Mestas, P.C. ("ASWM"). In August 2000, ASWM obtained a $200,000.00 line of credit. As de facto manager of ASWM, Ms. Adkins had signature rights on the line of credit and handled the transfer of funds from the line of credit. On or about August 23, 2000, Ms. Adkins transferred approximately $130,000 from the line of credit into the ASWM cost account. From the ASWM cost account, Ms. Adkins distributed funds to the heirs of the Fuller Estate. This distribution was made from the ASWM cost account because there were no longer any funds of the Fuller Estate in the estate account at Enterprise Bank, nor were any of the Fuller Estate funds being held by Ms. Adkins in any other trust account. At all times while Ms. Adkins represented Ms. Mathias in her capacity as personal representative of the Estate of W. Imojean Fuller, Ms. Adkins was obligated to keep funds belonging to the Fuller Estate separate from her own property or from the property of her law firm. Through her conduct as described above, Ms. Adkins failed, for a period of approximately 10 months, to keep the funds of the Fuller Estate separate from her own property and/or that of her own law firm.

At the time Ms. Adkins utilized funds belonging to the Fuller Estate for her own business and/or personal purposes, she knew that she did not have the consent or authority from Ms. Mathias or anyone else to use funds belonging to the Fuller Estate or to borrow from the Fuller Estate. At no time, either while Ms. Adkins was utilizing funds belonging to the Fuller Estate or thereafter, did Ms. Mathias or anyone else ratify or approve Ms. Adkins' utilization of the funds belonging to the Fuller Estate. By utilizing funds belonging to the Fuller Estate for her own business or personal purposes, Ms. Ad-

kins exercised unauthorized dominion or ownership over funds that she knew belonged to the Fuller Estate.

## II. CONCLUSIONS OF LAW

■ Ms. Adkins' conduct as alleged above violated Colo. RPC 1.15(a) (in connection with a representation, an attorney shall hold property of clients or third persons that is in the attorney's possession separate from the attorney's own property). Through her conduct as described above, Ms. Adkins knowingly converted funds belonging to the Fuller Estate. Through her knowing conversion of funds belonging to the Fuller Estate, Ms. Adkins violated Colo. RPC 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation).

The Supreme Court in *People v. Varallo*, 913 P.2d 1, 11 (Colo.1996), held:

Knowing misappropriation [for which the lawyer is almost invariably disbarred] consists simply of a lawyer taking a client's money entrusted to him, knowing that it is the client's money and knowing that the client has not authorized the taking. *In re Noonan*, 102 N.J. 157, 160, 506 A.2d 722 (1986). Misappropriation includes not only stealing, but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom. *In re Wilson*, 81 N.J. 451, 455 n. 1, 409 A.2d 1153 (1979). The motive of the lawyer is irrelevant in determining the appropriate discipline for knowing misappropriation.

(Quoting from *In re Roth*, 140 N.J. 430, 658 A.2d 1264, 1272 (1995), internal quotation marks omitted, bracketed remarks in original).

The Colorado Supreme Court continued:

Moreover, "[i]ntent to deprive permanently a client of misappropriated funds, however, is not an element of knowing misappropriation." *In re Barlow*, 140 N.J. 191, 657 A.2d 1197, 1201 (1995).

*Id.*

The facts in this case demonstrate that Ms. Adkins knew that the funds she withdrew from the Fuller Estate account belonged to the estate and that she was not authorized to distribute those funds to herself. Nothing more is required to conclude that Ms. Adkins engaged in knowing conversion of client funds.

## III. IMPOSITION OF SANCTION

■ Ms. Adkins withdrew approximately $130,000 from the Fuller Estate account. These misappropriated funds comprised virtually all of the moneys which had been deposited in that account in connection with the probate of the estate of Ms. Fuller.

The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards* ") is the guiding authority for selecting the appropriate sanction to impose for lawyer misconduct.

ABA *Standard* 4.11 provides:

Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client.

The presumptive sanction of disbarment for conversion of client property applies whether there is injury to the client or only threatened injury. Here, Ms. Adkins withdrew some $130,000, undeniably a serious potential monetary injury.

The presumptive sanction recommended by ABA *Standards* 4.41 (disbarment) and 4.42 (suspension) are distinguished by the degree of injury or potential injury occasioned by the lawyer's misconduct. Serious injury as opposed to simple injury suggests disbarment rather than suspension. The PDJ and Hearing Board consider the injury and risk of further injury which the client suffered to constitute serious injury warranting disbarment under the ABA *Standards*.

■ There is no question in Colorado that conversion of clients' funds from an attorney's trust account for a lawyer's personal use and benefit without authorization warrants disbarment. *See, e.g., People v. Wallace*, 936 P.2d 1282, 1284 (Colo.1997); *People v. Lavenhar*, 934 P.2d 1355 (Colo.1997); *Varallo*, 913 P.2d at 12. Although the amount of the conversion is not of significance, here it was indeed substantial and continuing over a number of months.

Determination of the appropriate sanction requires the PDJ and Hearing Board to consider aggravating and mitigating factors.

753

The admitted facts in the Complaint establish several aggravating factors pursuant to ABA *Standard* 9.22. Ms. Adkins exhibited a dishonest or selfish motive, *see id.* at 9.22(b); engaged in a pattern of misconduct, *see id.* at 9.22(c); and has had substantial experience in the practice of law, *see id.* at 9.22(i).

Ms. Adkins chose not to present any testimony in mitigation. Thus, the only factor in mitigation supported by the evidence in the record is that she has had no record of prior disciplinary action against her. ABA Standards 9.32(a). This factor alone does not call for a sanction less than disbarment. *See People v. Skaalerud*, 963 P.2d 341 (Colo. 1998). Although her counsel argued several forms of mitigation (Ms. Adkins' self-reporting of her wrong doing, her cooperation with the Office of Attorney Regulation Counsel, her remorse, her husband's illness, her subsequent return of the money to the beneficiaries of the estate, her good reputation, her mental anguish and consequent medical treatment, and the likelihood of additional penalties arising out of other proceedings), none of these things, individually or in combination, even had evidence been submitted and had they been proven, would have risen to the level of "extraordinary factors of mitigation" necessary to justify any penalty short of disbarment. *See Lavenhar*, 934 P.2d at 1359.

## *IV. ORDER*

It is hereby Ordered:

1.  Marilyn B. Adkins, registration number 12134 is disbarred from the practice of law effective thirty-one days from the date of this Order, and her name shall be stricken from the roll of attorneys licensed to practice law in the State of Colorado.

2.  Ms. Adkins is Ordered to pay the costs of these proceedings; the People shall submit a Statement of Costs within ten (10) days of the date of this Order. Ms. Adkins shall have five (5) days thereafter to submit a response thereto.