2014 ND 50

**In the Matter of the Application for DISCIPLINARY ACTION AGAINST Wickham CORWIN, Judge of the District Court.**

**Judicial Conduct Commission, Petitioner**

**v.**

**Wickham Corwin, Respondent.**

**No. 20130328.**

Supreme Court of North Dakota.

March 14, 2014.

Brent J. Edison (argued) and Kara J. Johnson (appeared), Bismarck, N.D., for petitioner.

Ronald H. McLean, Fargo, N.D., for respondent.

## SUSPENSION ORDERED

PER CURIAM.

[¶ 1] Wickham Corwin, judge of the district court for the East Central Judicial District, filed objections to the Judicial Conduct Commission's findings that he violated provisions of the Code of Judicial Conduct and its recommendation that he be suspended for two months, without net pay, and be assessed the costs and expenses of the disciplinary proceedings. We conclude there is clear and convincing evidence Judge Corwin violated N.D.Code Jud. Conduct Canon 3(C)(1), requiring a judge to discharge responsibilities without bias or prejudice, and N.D.Code Jud. Conduct Canon 3(C)(2), requiring a judge to not engage in conduct that could reasonably be perceived as sexual harassment. We order that Judge Corwin be suspended from his position as district judge for one month without pay effective December 1, 2014, and that he be assessed $11,958.56 for the costs and expenses of the disciplinary proceedings.

## I

[¶ 2] Judge Corwin was elected to the position of district court judge in 2008. In February 2013, the Commission initiated formal disciplinary proceedings against Judge Corwin concerning allegations of inappropriate conduct beginning in 2010 directed at a female court reporter assigned to work with him. The basic allegation was that Corwin continued to seek to have a sexual relationship with the court reporter after she repeatedly told him she was not interested. Because this conduct occurred before the new Code of Judicial Conduct became effective on July 1, 2012, Judge Corwin was charged with violating N.D.Code Jud. Conduct Canons 3(C)(1) and 3(C)(2). He was also charged with violating N.D.Code Jud. Conduct Canon 2(A), requiring a judge act in a manner that promotes public confidence in the judiciary, and N.D.Code Jud. Conduct Canon 4(A)(2), requiring a judge conduct extrajudicial activities so as not to demean the judicial office. Following a hearing, the Commission's hearing panel found Judge Corwin violated these provisions of the Code of Judicial Conduct and recommended he be suspended for two months, without net pay, and be assessed the costs and expenses of the disciplinary proceedings.

## II

[¶ 3] We explained our function in judicial disciplinary proceedings in *Judicial Conduct Comm'n v. McGuire*, 2004 ND 171, ¶ 6, 685 N.W.2d 748:

On the recommendation of the Commission or its hearing panel, this Court may censure or remove a judge from office for a willful violation of the Code of Judicial Conduct. *See* N.D.C.C. § 27-23-03(3); *Judicial Conduct Comm'n v. Hoffman*, 1999 ND 122, ¶ 5, 595 N.W.2d 592; *Judicial Conduct Comm'n v. Grenz*, 534 N.W.2d 816, 817 (N.D.1995); *Judicial Qualifications Comm'n v. Schirado*, 364 N.W.2d 50, 52 (N.D.1985). The term "willfully," when used in disciplinary proceedings against a judge, means acts that "were the performer's free will and were not done under coercion." *Judicial Qualifications Comm'n v. Cieminski*, 270 N.W.2d 321, 327 (N.D.1978); see also *Judicial Qualifications Comm'n v. Cieminski*, 326 N.W.2d 883, 886 n. 8 (N.D.1982). Before we may censure or remove a judge in a disciplinary proceeding, the charges must be established by clear and convincing evidence. *Schirado*, 364 N.W.2d at 52; *Cieminski*, 270 N.W.2d at 326. We review the Commission's findings and recommendations de novo on the record. *Hoffman*, 1999 ND 122, ¶ 5, 595 N.W.2d 592; *Grenz*, 534 N.W.2d at 817-18. Although our review is de novo, we accord due weight to the hearing body's findings because the hearing body had the opportunity to observe the demeanor of the witnesses. *Grenz*, 534 N.W.2d at 818; *Schirado*, 364 N.W.2d at 52.

[¶ 4] The Commission found that on May 24, 2010, Judge Corwin injured his hands while at work and his court reporter drove him to a hospital emergency room. Judge Corwin testified that "we came out of [the emergency room incident] with a connection we didn't have before." Because his hands were bandaged from the accident, Judge Corwin would ask the court reporter to come to his office and help him tie his necktie for court appearances. The court reporter did so and found the experiences "[u]ncomfortable but not alarming."

[¶ 5] On July 15, 2010, Judge Corwin and the court reporter, along with other Cass County Courthouse personnel, went to a Fargo restaurant and bar for an after-work gathering where they consumed alcohol. Judge Corwin invited the court reporter to join him on a bicycle ride that evening. She did so, and after the bicycle ride, Judge Corwin invited her into his home where they each had a glass of wine. While in the home, Judge Corwin engaged the court reporter in a conversation which she reasonably construed as a proposition for a sexual relationship. The court reporter rejected the offer, telling him she had read an article advising "it was a mistake to get involved with your boss." Judge Corwin responded that not all office romances end badly and pointed to his own 20-plus year marriage to his former secretary. As the court reporter was leaving the home, Judge Corwin hugged and kissed her.

[¶ 6] On the evening of Sunday, July 18, 2010, Judge Corwin called the court reporter at her home and requested she bring a blind she had taken to wash to the courthouse so he could hang it in a bathroom there. The court reporter told Judge Corwin she would not get involved in a relationship with him. On July 21, 2010, Judge Corwin called the court reporter while traveling to a court appearance in Hillsboro and asked if she would go on a bike ride with him the following evening. The court reporter declined the invitation and reiterated her belief that it

was a bad idea for the two of them to become intimate. Judge Corwin became angry. While on an extended lunch break on August 3, 2010, the court reporter received a text message from a coworker telling her Judge Corwin had been in the court reporter's office for 45 minutes with his feet on the desk reading a transcript. This was something Judge Corwin had not done before. He was still there when she returned to her office. The court reporter felt intimidated by the experience.

[¶ 7] On August 9, 2010, Judge Corwin asked the court reporter to shop for fixtures for a courthouse bathroom. She told him she could not leave the courthouse and Judge Corwin responded that she could leave if she went with him. The court reporter told Judge Corwin "just to leave the bathroom alone, it was fine, and he said, 'Stop being so fucking difficult.' " Later that day the court reporter sent Judge Corwin the following email:

> Wick, It seems like we are not communicating very well, so I am going to try this forum so there is no mistaking what I am saying. I do not want to be involved with you on *any* personal level whatsoever. I do not want to be any more than professional coworkers. What's concerning me is when I told you I didn't want to go bathroom shopping with you, you told me to "Stop being so f'ing difficult." I'm not being difficult. I'm trying to nicely tell you to back off. Please stop trying to "plan" things to get me alone. I'm sorry if this seems overly blunt, but I've said it other ways and you are either not hearing me or ignoring what I am saying. And, it's like a band-aid—better to just rip it off and get it over with. We've already talked about this subject. I don't want to revisit it again. Trust me, that is best all around. I enjoy working here and working with you and I want it to

stay that way. Enough said, I guess. I can't be much clearer than that.

[¶ 8] During this period of time, Judge Corwin frequently asked the court reporter into his office, closed the door, and discussed personal topics including their relationship. To extricate herself from these situations, the court reporter would have a coworker interrupt the closed-door discussions after a certain amount of time had passed. The coworker would also accompany the court reporter out of the courthouse at the end of the workday to prevent her from being alone with Judge Corwin. Judge Corwin repeatedly asked the court reporter to have lunch with him, but she consistently made excuses why she could not accompany him. In an October 4, 2010, email, the court reporter told Judge Corwin: "To save you the trouble of asking again, I'm gona [sic] pass on lunch permanently. None of the judges go to lunch w[ith] staff. Makes people talk. Don't need/want that." On December 23, 2010, Judge Corwin confronted the court reporter at a grocery store about their relationship, stating " 'You know what I want for Christmas? I want us to stop treating each other like shit.' " In April 2011, Judge Corwin suggested they should ask the court administrator to switch her to a new team. After the court reporter objected to the change, Judge Corwin told her " '[i]f this were still the law firm, I'd have taken care of the problem a long time ago, but since you work for the state it's going to be a little tougher.' "

[¶ 9] Judge Corwin on various occasions continued in his attempts to talk to the court reporter about their "relationship." On June 22, 2011, the court reporter sent Judge Corwin the following email:

> Wick, this is the last email I hope to have to send you about this. I know you said not to send you any more emails about this, but you also said you were

going to leave me alone and you haven't. Per our conversation yesterday and you wanting to YET AGAIN discuss some "made up" problem in your head about how we don't get along because of YOUR actions—DROP IT! I'm not discussing this issue again w[ith] you. I am not required to be your "friend" to work here. I do not see you harassing [a coworker] to HAVE to be your "friend" to work on this team. I am doing my job. I am in court when I'm supposed to be and I do clerical duties as they are assigned—just like [the coworker] does and that doesn't seem to be a problem w[ith] her. I avoid you because you won't stop trying to have "conversations" w[ith] me about something that I clearly have told you more than once to just leave alone. We are COWORKERS. Start acting like it! You are making me hate this job and feel ill having to come here because I don't want to deal w[ith] you. There is no "problem," other than that I didn't go along w[ith] your advances so now you are trying to make up problems to try and get rid of me, just like you told me you would do (get rid of me) if this were a private law firm. As I told you, I am not going down [without] a fight, so go ahead and try that route if you want to, but don't blame me when you don't like the consequences. This is your last warning. I have had it. DROP IT and stop harassing me. You do your job and I'll do mine and we'll get along just fine. Don't bring this issue up to me again. You can visit w[ith] me about anything work related, but don't touch this issue again. And I don't care if this email makes you furious. Get over yourself and quit being such a jerk cuz you didn't get your way. Maybe this is what you need to see in writing to get it—leave it alone and leave me alone!

[¶ 10] Judge Corwin and another district court judge had input over the court reporter's biennial performance review, which determined whether she would receive a biennial pay increase. In September 2011, Judge Corwin told the trial court administrator that the court reporter had arrived late for work. The trial court administrator sent the court reporter an email advising her to complete an annual leave slip for the morning she was late. The presiding judge informed the trial court administrator that the court reporter was late because she had been commuting from Grand Forks but was moving back to Fargo.

[¶ 11] During the court reporter's biennial performance review in January 2012, the other judge who had input gave her a favorable evaluation. Judge Corwin told the trial court administrator that he and the court reporter had difficulty communicating and that she had lately been reluctant to type for him. Judge Corwin eventually had a meeting with the trial court administrator, the assistant trial court administrator, and the presiding judge where he told them the court reporter was not getting his typing completed on a timely basis and complained about some of her emails to him. At a second meeting, Judge Corwin informed the participants about the events of July 15, 2010, and his subsequent interactions with the court reporter.

[¶ 12] On January 27, 2012, the presiding judge reassigned the court reporter's team to himself and reassigned the team he had been working with to Judge Corwin. Judge Corwin was told to not have contact with the court reporter, to not disparage her work, and to not discuss her work performance. The court reporter testified Judge Corwin's conduct made her feel harassed, caused her to be sick with

diarrhea and panic attacks, and ultimately caused her to look for other employment.

[¶ 13]   The Commission's hearing panel found:

28.   This matter comes before the Judicial Conduct Commission not as a matter in dealing with employment law or law concerning sexual harassment, but rather the matter dealing with the code involving judicial ethics.  The Canons do not provide a definition for sexual harassment.  In a matter such as this, sexual harassment is clearly recognized. The hearing panel obviously cannot know absolutely what was going on in Judge Corwin's mind so as to derive his true intent.  All the hearing panel can do is serve as a third party looking in to the facts that are being presented to make determinations.  Based upon the hearing panel's review of this evidence submitted, it is clear that sexual harassment occurred.  The July 15 event serves as the backdrop and is the context in which future events must be viewed.  While the July 15 event was not necessarily "harassment," the continued request for "a relationship" or "friendship," after there had been a clear indication that [the court reporter] wanted no relationship with Judge Corwin, was harassment.  [The court reporter] told Judge Corwin that she did not want anything more than to be a coworker and she did this on more than one occasion.  Despite the clear indication from [the court reporter], Judge Corwin persisted.  Had Judge Corwin left [the court reporter] alone after July 15, there would have been no violation of the Judicial Code of Ethics.  However, the harassing and intimidating conduct which was engaged in by Judge Corwin thereafter clearly was sexual harassment.

29.   After being unsuccessful at not getting the type of relationship desired by Judge Corwin, he then took the approach of either trying to have [the court reporter] reassigned, disciplined, or terminated.  While [the other judge] provided an email, as requested by [the trial court administrator], indicating that [the court reporter's] work was favorable, Judge Corwin did not respond to the email but orally talked to [the trial court administrator] explaining there were difficulties.  [The trial court administrator] then indicated that this appeared to be a serious matter and that it was probably going to evolve into a disciplinary matter.  It was at that point that Judge Corwin indicated that he would have to have further conversations with [the trial court administrator] to explain the full story.  This matter comes before the Judicial Conduct Commission, not from [the court reporter], but through the administrative channels of the North Dakota Supreme Court. [The court reporter] did not want to report Judge Corwin, and if anything, being involved in a public proceeding is probably her worst fear.  Further, Judge Corwin's conduct has subjected the judiciary to public ridicule which undermines the public's confidence in the judiciary.

30.   The above conduct of Judge Corwin violates the following Canons of the North Dakota Code of Judicial Conduct:

A.   N.D.Code Jud. Conduct Canon 3C(2), providing, in part, a judge shall not, in the performance of administrative duties, engage in speech, gestures, or other conduct that could reasonably be perceived as sexual harassment.  A reasonable person in [the court reporter's] position could reasonably perceive, and [the court reporter] in fact perceived, that Judge Corwin made a proposition for a sexu-

al relationship, was rebuffed but nevertheless persisted for a lengthy period of time, ultimately concluded the relationship was not going to happen, and set upon a course of retaliation.

B. N.D.Code Jud. Conduct Canon 3C(1), providing, in part, a judge shall diligently discharge the judge's administrative responsibilities without bias or prejudice. Judge Corwin subjected [the court reporter] to disparate and inappropriate treatment based on her sex and based on his interest in a sexual relationship with her.

C. N.D.Code Jud. Conduct Canon 2A, providing, in part, a judge shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary; and N.D.Code Jud. Conduct Canon [4A(2)], providing, in part, a judge shall conduct all of the judge's extrajudicial activities so that they do not demean the office. Judge Corwin's conduct subjected the judiciary to public ridicule, undermining the public's confidence in the integrity and impartiality of the judiciary and demeaning the judicial office.

[¶ 14] The Commission's hearing panel recommended that Judge Corwin be suspended without net pay for two months and that he pay $11,958.56 for the costs and expenses of the disciplinary proceedings.

## II

[¶ 15] Judge Corwin argues that the Commission erred in finding he violated N.D.Code Jud. Conduct Canon 3(C)(2), which provided that "[a] judge shall not, in the performance of administrative duties, engage in speech, gestures, or other conduct that could reasonably be perceived as sexual harassment and must require the same standard of conduct of others subject to the judge's direction and control."

## A

[¶ 16] Judge Corwin argues concepts of sexual harassment under federal and state laws should govern any assessment of the evidence in this case, and the Commission's hearing panel erred in refusing to allow the presentation of expert testimony about the law on sexual harassment.

[¶ 17] We reject this argument for several reasons. First, N.D.Code Jud. Conduct Canon 3(C)(2) does not require the establishment of sexual harassment under federal or state law to constitute a violation of its provisions, and this Court has recognized that judicial disciplinary proceedings "are neither civil nor criminal." *Judicial Qualifications Comm'n v. Cieminski*, 270 N.W.2d 321, 326 (N.D. 1978). Second, N.D.Code Jud. Conduct Canon 3(C)(2) merely requires a finding of "conduct that *could reasonably be perceived* as sexual harassment." (Emphasis added). Third, because the only issues before the hearing panel were whether Judge Corwin violated provisions of the Code of Judicial Conduct, whether his conduct constituted sexual harassment as defined under federal or state laws was not a relevant inquiry. *See McGuire*, 2004 ND 171, ¶ 16, 685 N.W.2d 748; *Judicial Conduct Comm'n v. Hoffman*, 1999 ND 122, ¶ 9, 595 N.W.2d 592.

[¶ 18] If a formal definition of "sexual harassment" was required, the relevant definition for purposes of this case is found in Unified Judicial System Policy 119, which governed all court personnel and was admitted into evidence. Policy 119, which was in effect during the relevant time frame, provided:

A. *Statement of Policy and Purpose.*

In order to maintain a positive work environment for all court employees, sexual harassment or harassment on the basis of sex, age, race, color, religion, national origin or disability is prohibited.

B. *Definition of Harassment.*

Prohibited harassment consists of unwelcome verbal or physical conduct or communication of a sexual nature or based upon an employee's sex, age, race, color, religion, national origin or disability when:

1. Submission to that conduct or communication is made, either explicitly or implicitly, a term or condition of obtaining employment, promotion, or other employment opportunities;

2. Submission to or rejection of that conduct or communication is used as a factor in decisions affecting the harassed individual's employment, promotion or other employment opportunities; or

3. The conduct or communication has the purpose or effect of unreasonably interfering with the employee's ability to perform assigned duties or creates an intimidating, hostile, or offensive working environment.

Sexual harassment may include requests for sexual favors, sexual advances, verbal abuse of a sexual nature, displays in the workplace of sexually suggestive objects or materials or other conduct or communication of a sexual nature which meets the criteria above.

[¶ 19] Policy 119 was sufficient to inform both Judge Corwin and the court reporter what type of conduct could be perceived as sexual harassment. We conclude the hearing panel did not err in refusing to allow or consider expert evidence about concepts of sexual harassment under federal or state law.

B

■ [¶ 20] Judge Corwin argues he did not violate N.D. Jud. Conduct Canon 3(C)(2) because the record compiled before the hearing panel does not establish that he engaged in any conduct of a sexual nature. Judge Corwin argues:

After July 15, 2010, it is undisputed that there was no touching or any other form of physical contact. There were no sexually suggestive written communications, displays or gestures of any kind. Nothing Judge Corwin said was sexual in nature, or even ambiguous. When [the court reporter] was initially interviewed by [the state court administrator], she admitted that after July 15 "Judge Corwin never made any openly sexual remarks to her or tried to touch her inappropriately." ... To the extent a physical or intimate relationship was mentioned, it was only as part of an explicit statement by Judge Corwin that he was not pursuing such a relationship. The only relationship that was discussed was their working relationship. Judge Corwin's consistent goal was to maintain or restore that relationship. [The court reporter] conceded in her testimony that what Judge Corwin wanted and talked about was a friendly relationship.... Even in her final, scathing email, [the court reporter] only accused Judge Corwin of harassing her to be a "friend."

Judge Corwin contends all of his communications with the court reporter after the July 15, 2010 incident were nothing more than "a persistent attempt to maintain or restore an amicable working relationship," and "what happened in this case was the result of misunderstandings, not deliberate misconduct on [his part]."

[¶ 21] Even if we accept Judge Corwin's claim that he was simply seeking to reestablish an "amicable working relationship," his attempts to do so after July 15,

2010 were at best naive. Most of Judge Corwin's communications were requests for meetings with the court reporter to occur outside the workplace setting. This was abnormal for judges and their coworkers. More significant, Judge Corwin was made well aware of how the court reporter interpreted his attempts to reestablish their "relationship" through her communications to him. Yet, Judge Corwin persisted in his unsuccessful efforts to meet the court reporter in nonwork settings. It was reasonable for the court reporter to interpret Judge Corwin's conduct as seeking much more than an "amicable working relationship."

[¶ 22] We conclude there is clear and convincing evidence Judge Corwin engaged in "conduct that could reasonably be perceived as sexual harassment" in violation of N.D.Code Jud. Conduct Canon 3(C)(2).

### III

[¶ 23] Judge Corwin argues there is not clear and convincing evidence he violated N.D.Code Jud. Conduct Canon 3(C)(1), which provided "[a] judge shall diligently discharge the judge's administrative responsibilities without bias or prejudice and maintain professional competence in judicial administration, and should cooperate with other judges and court officials in the administration of court business."

[¶ 24] The evidence establishes that Judge Corwin sought to have an inappropriate relationship with the court reporter after she rebuffed his efforts to do so. Judge Corwin treated the court reporter differently than her coworker on the team. After finally realizing a sexual relationship would not materialize, Judge Corwin suggested the court reporter be switched to another team and told her " '[i]f this were still the law firm, I'd have taken care of the problem a long time ago, but since you

work for the state it's going to be a little tougher.' " Judge Corwin then began complaining about the court reporter's work performance to court administrators before and during her biennial performance review. Judge Corwin relies on the testimony of the presiding judge, who recollected that Judge Corwin did not want any disciplinary actions taken against the court reporter. However, the presiding judge did not become involved in this matter until much of Judge Corwin's inappropriate conduct had already occurred.

[¶ 25] We conclude there is clear and convincing evidence Judge Corwin did not discharge his administrative responsibilities without bias or prejudice in violation of N.D.Code Jud. Conduct Canon 3(C)(1).

### IV

[¶ 26] The Commission also found Judge Corwin violated N.D.Code Jud. Conduct Canon 2(A), requiring a judge act in a manner that promotes public confidence in the judiciary, and N.D.Code Jud. Conduct Canon 4(A)(2), requiring a judge conduct extra-judicial activities so as not to demean the judicial office. Members of this Court have discouraged the unnecessary "stacking" or "piling on" of rule violations for the same conduct. *See Disciplinary Bd. v. Lee*, 2013 ND 151, ¶ 36, 835 N.W.2d 836 (Crothers, J., concurring specially); *Disciplinary Bd. v. Rozan*, 2011 ND 71, ¶ 25, 796 N.W.2d 384 (Crothers, J., concurring in part and dissenting in part); *Disciplinary Bd. v. Wolff*, 2010 ND 175, ¶¶ 28, 34, 788 N.W.2d 594 (Crothers, J., specially concurring). We do not consider whether Judge Corwin's conduct also violated these Canons because, even if it did, the sanction would not be affected.

### V

[¶ 27] In *Judicial Conduct Comm'n v. Hagar*, 2014 ND 33, ¶ 8, 842 N.W.2d 873, we explained relevant factors for the imposition of discipline:

To determine the appropriate sanction, we consider the following nonexclusive factors: (a) whether the misconduct is an isolated instance or evidenced a pattern of conduct; (b) the nature, extent and frequency of occurrence of the acts of misconduct; (c) whether the misconduct occurred in or out of the courtroom; (d) whether the misconduct occurred in the judge's official capacity or in his private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (f) whether the judge has evidenced an effort to change or modify his conduct; (g) the length of service on the bench; (h) whether there have been prior complaints about this judge; (i) the effect the misconduct has upon the integrity of and respect for the judiciary; and (j) the extent to which the judge exploited his position to satisfy his personal desires.

. . . .

With respect to mitigating factors, we generally are mindful that a matter represents the first complaint against a judge, of the length and good quality of the judge's tenure in office, of exemplary personal and professional reputation, of sincere commitment to overcoming the fault, of remorse and attempts at apology or reparations to the victim. We have also found relevant consideration of whether a judge found guilty of misconduct will engage in similar misconduct in the future, or whether the inappropriate behavior is susceptible to modification.

(quoting *McGuire*, 2004 ND 171, ¶ 33, 685 N.W.2d 748).

[¶ 28] Judge Corwin engaged in a pattern of misconduct during an 18–month period, both inside and outside of the workplace. Judge Corwin's conduct had a negative physical and mental impact on the court reporter. Judge Corwin continues to maintain that the situation was basically a misunderstanding. Judge Corwin's actions have tarnished the integrity of and respect for the judiciary.

[¶ 29] Judge Corwin has been a member of the bar since 1976 and a district court judge since 2009. He has no prior disciplinary record. The court reporter's accusations were brought to light by Judge Corwin's self-disclosure, and he has cooperated fully in the disciplinary proceedings. Judge Corwin received counseling and he has announced that he will not seek reelection for another term as district court judge, which expires December 31, 2014.

[¶ 30] This Court may suspend a judge without pay and assess costs against him if we find the judge violated the Code of Judicial Conduct. *See Hagar*, 2014 ND 33, ¶ 11, 842 N.W.2d 873; *McGuire*, 2004 ND 171, ¶¶ 32, 37, 685 N.W.2d 748; *Cieminski*, 326 N.W.2d at 884; R. Jud. Conduct Comm. 8(B) and 23(C)(3). In *McGuire*, at ¶ 38, we suspended a judge for two months without net pay and assessed against him the costs of the proceedings based on his sexually boorish behavior directed at several female courthouse employees over a lengthy period of time. We said the judge's conduct "was not egregious, but was crude and uncouth," and "offended, shocked, and intimidated employees under his supervision." Although Judge Corwin's conduct was disturbing, it was less pervasive in the court system and occurred over a shorter period of time than the conduct involved in *McGuire*. Under the circumstances, we order that Judge Corwin be suspended for a period of one month without pay, *see Hagar*, at ¶ 11, and that he be assessed the costs and expenses of the proceedings.

VI

[¶ 31] We have considered other arguments raised and they do not affect our

decision. We conclude there is clear and convincing evidence Judge Corwin violated N.D.Code Jud. Conduct Canons 3(C)(1) and 3(C)(2). We order that Judge Corwin be suspended from his position as district judge for one month without pay and that he be assessed $11,958.56 for the costs and expenses of the disciplinary proceedings. Judge Corwin's current term ends December 31, 2014. He has announced he will not seek reelection for another term. In light of those facts and in order to minimize the impact of his suspension on the parties whose cases are pending in the East Central Judicial District, including the timely disposition of those cases, as well as the impact on the other judges of that District, we order the suspension effective December 1, 2014.

[¶ 32] GERALD W. VANDE WALLE, C.J., ALLEN L. SCHMALENBERGER, S.J., DALE V. SANDSTROM, CAROL RONNING KAPSNER, and DANIEL J. CROTHERS, JJ., concur.

[¶ 33] The Honorable ALLAN L. SCHMALENBERGER, S.J., sitting in place of McEVERS, J., disqualified.