2015 ND 222

**In the Matter of the Application for DISCIPLINARY ACTION AGAINST Jesse D. MATSON, a Member of the Bar of the State of North Dakota.**

**Disciplinary Board of the Supreme Court of the State of North Dakota, Petitioner**

v.

**Jesse D. Matson, Respondent.**

Nos. 20150219–20150221.

Supreme Court of North Dakota.

Aug. 31, 2015.

PER CURIAM.

[¶ 1] The Court has before it Findings of Fact, Conclusions of Law, and Recommendation of a hearing panel of the Disciplinary Board recommending that Jesse D. Matson be suspended from the practice of law in North Dakota for six months and one day; that he be required to take a continuing legal education course on the rules of professional conduct as a condition of reinstatement; that he pay the costs and expenses of the disciplinary proceeding; and that he pay the unpaid costs and expenses assessed in a previous disciplinary action. We accept the recommendation. We suspend Matson from the practice of law for six months and one day, and we require him to take a continuing legal education course on the rules of professional conduct as a condition of reinstatement. We order Matson to pay costs and expenses of these disciplinary proceedings in the amount of $6,287.52 and of a prior disciplinary proceeding in the amount of $4,485.43.

[¶ 2] Matson was admitted to practice law in North Dakota on October 10, 2011, and he is currently licensed to practice law.

[¶ 3] This matter involves three consolidated disciplinary actions against Matson, file numbers 5680–SE–1404, 5711–SE–1407, and 5718–SE–1409. Matson was served a summons and petition for discipline for file number 5680–SE–1404 on October 1, 2014. He was served a summons and petition for discipline for file numbers 5711–SE–1407, and 5718–SE–1409 on December 22, 2014. Matson failed to answer or otherwise respond to the petitions. Therefore, under N.D.R. Lawyer Discipl. 3.1(E)(2), Matson is in default and the charges contained in the petitions for discipline are admitted. A dispositional hearing was held before the hearing panel on May 13, 2015.

[¶ 4] In file number 5680–SE–1404, Matson represented a client in a divorce action including parental responsibility. The client was in the military and was stationed in South Korea during the representation. Matson took a substantial amount of time to respond to the client's attempts to contact him. His actions during the case resulted in several delays. He arrived for the trial seconds before it began, and attended a hearing in another

matter during a recess. Therefore, the client was uninformed about Matson's thoughts regarding the trial or about the next steps during the trial. Matson failed to understand the military compensation system resulting in an error in child support. Matson falsely assured the client he would get the judgment amended with respect to child support. Matson delayed providing rulings to the client, and after January 2014 ceased communicating with the client.

[¶ 5] In file number 5711–SE–1407, a client paid Matson a $2,000 retainer to represent her in a child support modification matter at a rate of $200 per hour. The retainer was deposited into Matson's operating account, not an IOLTA account. Matson failed to communicate with the client and failed to provide copies of documents drafted on her behalf. Because of the lack of progress, the client sought other counsel and paid another retainer fee. Matson provided no work product that could be used by the new counsel. Despite several requests, Matson never sent the client an itemized billing or accounting, and Matson did not refund any portion of her retainer. The client attempted to arbitrate her fee issue, but Matson did not respond to her request.

[¶ 6] In file number 5718–SE–1409, a client paid Matson a $4,000 retainer to represent him in a divorce action involving primary residential responsibility at a rate of $200 per hour. The retainer was deposited into Matson's operating account, not an IOLTA account. Neither Matson nor his law firm had an IOLTA account. Matson took approximately two months to prepare the summons and complaint, and the delay resulted in complications for service on the spouse. Matson took approximately four months to prepare interim documents and discovery and failed to file any of the divorce documents with the district

court. His work on the documents was not thorough and showed a lack of legal knowledge and skill. Matson did not properly communicate with the client or keep him reasonably informed about the status or objectives of the case. The client retained new counsel and Matson failed to provide a copy of his file upon request. Based on the accounting provided to the client's new counsel, Matson charged an unreasonable fee which included charges for overhead items. Although a credit balance existed based on the accounting, Matson failed to refund the balance to the client.

[¶ 7] The fee agreements in 5711–SE–1407 and 5718–SE–1409 stated the retainers were non-refundable and also stated that the retainer would be applied toward earned fees and reimbursement for costs. The agreement does not state that the fee was earned upon receipt, was a minimum fee, or was for the purpose of retaining Matson's time. All three clients were injured or potentially injured by Matson's conduct. They were forced to seek new counsel or proceed self-represented, experienced delays, and incurred expenses.

[¶ 8] Matson was reprimanded by a hearing panel of the disciplinary board on April 30, 2014. He was ordered to pay costs and expenses in the amount of $4,485.43. He failed to pay that amount or make arrangements with Disciplinary counsel for payments. The hearing panel concluded Matson's knowing failure to pay costs as ordered caused injury and interfered with the disciplinary system.

[¶ 9] The hearing panel concluded Matson violated N.D.R. Prof. Conduct 1.1, Competence, by failing to have the requisite legal knowledge, skill, thoroughness, and preparation, which were reasonably necessary to represent the clients; N.D.R. Prof. Conduct Rule 1.3, Diligence, by failing to act with reasonable diligence and

promptness in representing the clients; N.D.R. Prof. Conduct Rule 1.4(a), Communication, by failing to reasonably consult with the clients about the manner in which their objectives were to be accomplished and by failing to make reasonable efforts to keep them reasonably informed about the status of their cases; N.D.R. Prof. Conduct Rule 1.5(a), Fees, by charging unreasonable fees for his services, including charges for overhead items; N.D.R. Prof. Conduct 1.15(a), Safekeeping Property, by failing to hold retainers separate from his own property and not placing them into a IOLTA account; and N.D.R. Prof. Conduct 1.16(e), Declining or Terminating Representation, by failing to take steps to refund any advanced payment of fee or expense that had not been earned or incurred and by failing to surrender client files and papers.

[¶ 10]   The hearing panel considered aggravating factors of a prior discipline history of a reprimand by a hearing panel and a consent probation, a pattern of misconduct, refusal to acknowledge the wrongful nature of his conduct, vulnerability of one victim, and other factors under N.D. Stds. Imposing Lawyer Sanctions 9.22. The hearing panel concluded Matson's claimed mitigating factors were not credible, except that the conduct underlying these three complaints occurred before his prior reprimand or consent probation. N.D. Stds. Imposing Lawyer Sanctions 9.32. The hearing panel gave little weight to a mitigating factor of computer software and staffing problems, because Matson was responsible for ensuring clients were not affected.

[¶ 11]   After considering the North Dakota Standards for Imposing Lawyer Sanctions, the hearing panel recommended that Matson be suspended from the practice of law in North Dakota for six months and one day; that he be required to take a continuing legal education course on the rules of professional conduct as a condition of reinstatement; that he pay the costs and expenses assessed in the amount of $4,485.43 in file number 5484–SE–1302 within 30 days; and that he pay the costs and expenses in these proceedings in the amount of $6,287.52 within 60 days.

[¶ 12]   This matter was referred to the Supreme Court under N.D.R. Lawyer Discipl. 3.1(F). Objections to the findings of fact, conclusions of law, and recommendations by the hearing panel were due within 20 days of the service of the report of the hearing panel. No objections were received. The Court considered the matter, and

[¶ 13]   **ORDERED,** that the findings of fact, conclusions of law, and recommendations by the hearing panel are accepted.

[¶ 14]   **IT IS FURTHER ORDERED,** that Jesse D. Matson is suspended from the practice of law for six months and one day, effective September 15, 2015.

[¶ 15]   **IT IS FURTHER ORDERED,** that Matson must pay the costs and expenses in file number 5484–SE–1302 in the amount of $4,485.43 within 30 days of the judgment payable to the Secretary of the Disciplinary Board, Judicial Wing, 1st Floor, 600 East Boulevard Avenue, Bismarck, ND 58505–0530.

[¶ 16]   **IT IS FURTHER ORDERED,** that Matson must pay the costs and expenses of these disciplinary proceedings in the amount of $6,287.52 within 60 days of the judgment payable to the Secretary of the Disciplinary Board, Judicial Wing, 1st Floor, 600 East Boulevard Avenue, Bismarck, ND 58505–0530.

[¶ 17]   **IT IS FURTHER ORDERED,** that Matson reimburse the Client Protection Fund for any payments to his clients.

[¶ 18] **IT IS FURTHER ORDERED,** that Matson must comply with N.D.R. Lawyer Discipl. 6.3 regarding notice.

[¶ 19] **IT IS FURTHER ORDERED,** that reinstatement is governed by N.D.R. Lawyer Discipl. 4.5(B).

[¶ 20] **IT IS FURTHER ORDERED,** that as conditions of reinstatement, Matson is required to take a continuing legal education course on the rules of professional conduct and is required to pay the costs and expenses ordered in paragraphs 15 and 16 of this order.

[¶ 21] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS and CAROL RONNING KAPSNER, JJ., concur.

CROTHERS, Justice, concurring and dissenting.

[¶ 22] I agree with adoption of the Disciplinary Board's Findings of Fact and Conclusions of Law. Majority opinion at ¶ 13. I reluctantly agree with the sanctions because the failure to adopt the Board's recommendations would require additional proceedings that would delay imposition of discipline.

[¶ 23] In two of the three cases before us, Matson accepted retainers. Majority opinion at ¶¶ 5 and 6. The Disciplinary Board found Matson and his clients agreed Matson would charge an hourly fee. *Id.* The Board also found the retainers were supposed to be applied toward earned fees and reimbursement of costs. *Id.* at ¶ 7. The fee agreements stated the retainers were non-refundable and also stated that the retainers would be applied toward earned fees and reimbursement for costs. *Id.* The agreements did not state the fees were earned upon receipt, were a minimum fee or were to retain Matson's availability for future representation. *Id.*

[¶ 24] According to the Findings which we adopt, Matson's fee agreements were inadequate to qualify as earned-when-received retainers that became Matson's property. Majority opinion at ¶ 7; *see In re Disciplinary Action Against Hann,* 2012 ND 160, ¶ 21, 819 N.W.2d 498. As a result, the money belonged to the clients—not Matson—and needed to be deposited in a trust account rather than in Matson's operating account until earned by Matson. N.D.R. Prof. Conduct 1.15(a) and (c).

[¶ 25] The Disciplinary Board found and we accepted the fact Matson did not have a trust account. Majority opinion at ¶ 6. Because Matson had no trust account, the retainers obviously were not deposited in a trust account as required by Rule 1.15(c). Nor were the clients' funds kept separate from Matson's funds as required by Rule 1.15(a). Matson therefore violated Rule 1.15.

[¶ 26] If Matson had a trust account, and if Matson would have deposited the two retainers into the trust account, but then immediately and improperly withdrew the money, I submit we would readily conclude Matson misappropriated client funds in violation of Rule 1.15. For such a knowing misappropriation of client funds, our standards for imposing lawyer discipline provide for disbarment as the appropriate sanction. N.D. Stds. Imposing Lawyer Sanctions 4.11. One collection of cases applying this guideline states:

"Although Standard 4.11 should be applied when courts find a 'knowing' conversion, some courts use the mens rea of 'intentional' to support a disbarment sanction. Others use the terms 'intentional' and 'knowing' interchangeably. Regardless of the terminology used, the focus is on deliberate conduct. *See In re Discipline of Corey,* 274 P.3d 972, 977, 978 (Utah 2012) (lawyer's conversion of client's settlement funds for the operational needs of his law firm was 'knowing and intentional'; 'Generally our rule is that "intentional misappro-

priation of clients funds will result in disbarment unless the lawyer can demonstrate truly compelling mitigating circumstances." ') (citation omitted).

"Some courts have established a bright-line rule that disbarment is the only appropriate discipline when a lawyer knowingly converts client funds. In the seminal case of *In re Wilson* [81 N.J. 451], 409 A.2d 1153 (N.J.1979), the Supreme Court of New Jersey noted that it is commonplace for lawyers' work to involve possession of their clients' funds, whether it be a real estate closing, the establishment of a trust, the purchase of a business, the investment of funds, the receipt of proceeds of litigation, or any one of a multitude of other situations. The court said that there are few more egregious acts of which a lawyer can be guilty than misappropriation of those funds and that '[r]ecognition of the nature and gravity of the offense suggests only one result disbarment.' *Id.* at 1155."

ABA, *Annotated Standards for Imposing Lawyer Sanctions*, pp. 132–33 (2015).

[¶ 27] The second part of Standard 4.11 requires a finding that the client was actually or potentially injured. The majority expressly concludes, "All three clients were injured or potentially injured by Matson's conduct. They were forced to seek new counsel or proceed self-represented, experienced delays, and incurred expenses." Majority opinion at ¶ 7. The Board also found Matson violated Rule 1.16 by failing to refund the unearned fees. *Id.* at ¶¶ 5, 6 and 9. This misconduct is significant either as proof of an independent violation of the Rules or proof that Matson's conduct injured his clients. The ABA *Annotated Standards for Imposing Lawyer Sanctions*, pp. 139, 149, provides:

"The second element of Standard 4.11 is 'injury or potential injury to a client.' *In People v. Edwards*, 240 P.3d 1287

(Colo.O.P.D.J.2010), citing Standards 4.1 and 4.11, inter alia, the Colorado Supreme Court found in disbarring a lawyer for converting client funds, inter alia, that he caused injury by failing to return an unearned retainer to his client after doing little or no work. The client testified she was forced to borrow substantial sums of money in order to hire another lawyer to represent her and that she attempted with little success to represent herself in court, causing her case to be delayed. *See also People v. Adkins*, 57 P.3d 750 (Colo.O.P.D.J.2001) (citing Standard 4.11, inter alia, court found the lawyer's knowing conversion of some $130,000 in estate funds for her own business and/or personal purposes caused undeniably serious potential monetary injury, warranting disbarment); *In re Fountain*, 913 A.2d 1180 (Del.2006) (citing Standard 4.11, inter alia, and imposing disbarment, the court noted that lawyer's clients suffered financial injury as a result of lawyer's conversion of unearned retainers and Medicaid reimbursement check); *In re Weaver* [294 Kan. 751], 281 P.3d 502 (Kan.2012) (lawyer who caused serious injury after taking money from thousands of vulnerable loan-modification clients, giving most of the money to nonlawyers and then doing nothing on his clients' behalf, was disbarred under Standard 4.11); *Ky. Bar Ass'n v. Edwards*, 377 S.W.3d 557, 563 (Ky.2012) (permanent disbarment warranted for lawyer who took 'advantage of a highly vulnerable, disabled client' adjudged incompetent when he wrote $78,000 in checks from her account, described as 'loans,' and sold her property without court approval); *In re Humphrey*, 15 So.3d 960 (La.2009) (multiple acts of misconduct, including lawyer's refusal to comply with court order to turn over a piece of artwork of a renowned local artist she was to hold in trust, caused

serious to potentially serious injury under Standard 4.11, inter alia, requiring disbarment); *Rayburn v. Bd. of Prof'l Responsibility*, 300 S.W.3d 654 (Tenn. 2009) (affirming order of disbarment under Standard 4.11, inter alia, court found injury to clients as a result of lawyer's misuse of client funds when he knowingly and repeatedly deprived his clients of funds to which they were entitled, causing one client to incur considerable expense to recover funds lawyer withheld for more than four years); *In re Disciplinary Proceeding Against Simmerly* [174 Wash.2d 963], 285 P.3d 838, 851 (Wash.2012) (in imposing disbarment, the court affirmed findings that lawyer's misappropriation of client funds caused potential injury to some clients and actual injury to others, as well as harm to the administration of justice, including the disciplinary process, which is 'harmed every time a trust account is misused')."

[¶ 28] Even if Matson did not knowingly misappropriate client funds, "[s]uspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client." *Id.* at 4.12. One collection of cases applying this guideline explains:

"Courts commonly reserve suspension for lawyers who engage in misconduct that does not amount to knowing misappropriation or conversion of client property but, rather, deal with it improperly. In *In re Konopka* [126 N.J. 225], 596 A.2d 733 (N.J.1991), the court imposed a six-month suspension for a lawyer who engaged in careless bookkeeping practices and stressed that disbarment should be imposed only if knowing misappropriation of client funds was established by clear and convincing evidence. Rejecting the disciplinary panel's finding that the lawyer 'knowingly' misappropriated clients' funds, the court relied on

evidence that established the lawyer never reconciled his trust account and did not use his trust account for venal purposes.

. . . .

"The most common cases under Standard 4.12 involve lawyers who commingle client funds with their own or fail to remit client funds promptly. *See, e.g., Office of Disciplinary Counsel v. Au* [107 Hawai'i 327], 113 P.3d 203 (Haw. 2005) (citing 4.12, inter alia, court imposed five-year suspension for lawyer whose misconduct included mishandling client funds and client trust account, holding that although misconduct did not appear to have caused actual harm to lawyer's clients, it did cause potentially serious injury to them and seriously harmed the integrity of the legal system); *In re Caskey*, 866 So.2d 226, 227 (La.2004) (citing Standard 4.12, court ordered six-month suspension for lawyer who retained attorney's fees in his client trust account for several months, resulting in improper commingling of his funds with those of his clients, and stated that 'it is undisputed that there is no evidence of conversion of client funds, nor is there any evidence respondent's conduct caused any harm to his clients'); *Att'y Grievance Comm'n v. McLaughlin* [409 Md. 304], 974 A.2d 315 (Md.2009) (indefinite suspension, rather than disbarment, appropriate for misconduct including operation of law practice from single checking/escrow account resulting in the commingling of lawyer's personal funds with client and third-party funds; court found that lawyer lacked dishonest motive, repaid clients, and felt genuine remorse); *In re Disciplinary Proceeding Against McKean* [148 Wash.2d 849], 64 P.3d 1226, 1233 (Wash.2003) (citing Standard 4.12, court imposed six-month suspension followed by six months of probation on lawyer who, inter alia, commingled client money held in trust with

his own money, noting 'Lawyers sometimes forget that the dangers of commingling are not merely that the lawyer will squander the money "borrowed" from a trust account and not be able to restore it, but that the commingled funds might be subject to attachment by a lawyer's creditors, thus preempting the lawyer's ability to do so') (citation omitted); *But see In re Farrar* [183 Vt. 592], 949 A.2d 438 (Vt.2008) (although presumptive sanction was suspension under Standard 4.12 for lawyer's acknowledged practice of commingling client and personal funds in his trust account, court found public reprimand appropriate when lawyer lacked dishonest motive, made full and free disclosure, and expressed remorse)."

ABA, *Annotated Standards for Imposing Lawyer Sanctions*, pp. 141–42.

[¶ 29] Here, if the facts and circumstances prove Matson knowingly converted client funds, he should be disbarred. The Rule 1.15 trust account requirement is decades old. The *Haan* and *In re Disciplinary Action Against Hoffman*, 2013 ND 137, 834 N.W.2d 636, cases predate Matson's mishandling of these clients' funds. Matson nevertheless did not even have a trust account when he agreed to hourly fee representations and accepted thousands of dollars in retainers from these clients. That client money was immediately converted by Matson's deposit in his business operating account.

[¶ 30] Assuming for discussion that Matson's case teeters between the "intentional" and "should have known" requirements of Standards 4.11 and 4.12, Matson's suspension should be for longer than six months and a day. Matson did not have a trust account. He nevertheless accepted client funds as a retainer out of which future legal fees and costs were to be deducted. He immediately took ownership of all of those funds. This is serious misconduct in clear violation of Rule 1.15. Standing alone, this misconduct would call for a serious sanction. But, as the Disciplinary Board found and this Court adopted, Matson's Rule 1.15 violation does not stand alone. He also violated Rule 1.1 for lack of competence, Rule 1.3 for lack of diligence, Rule 1.4(a) for lack of adequate communications, Rule 1.5(a) for charging unreasonable fees and improperly billing for overhead items, and Rule 1.16(e) for failing to refund unearned fees. Majority opinion at ¶ 9.[1] The Disciplinary Board also found the misconduct was accompanied by aggravating circumstances of prior discipline, refusal to acknowledge the wrongful nature of his conduct, vulnerability of a victim and failure to pay costs assessed against him in a prior disciplinary matter. Given Matson's disciplinary history and cocktail of misconduct here, any suspen-

---

1. The Disciplinary Board noted that their Findings and Conclusions regarding multiple Rule violations was not "stacking" of charges or "piling on," but rather an effort to show the breadth of Matson's violations. I have written before about what I perceived were unnecessary findings of Rule violations. *See In re Disciplinary Action Against Corwin*, 2014 ND 50, ¶ 26, 843 N.W.2d 830 ("Members of this Court have discouraged the unnecessary 'stacking' or 'piling on' of rule violations for the same conduct."). *See Disciplinary Bd. v. Lee*, 2013 ND 151, ¶ 36, 835 N.W.2d 836 (Crothers, J., concurring specially); *Disciplinary Bd. v. Rozan*, 2011 ND 71, ¶ 25, 796 N.W.2d 384 (Crothers, J., concurring in part and dissenting in part); *Disciplinary Bd. v. Wolff*, 2010 ND 175, ¶¶ 28, 34, 788 N.W.2d 594 (Crothers, J., specially concurring.). To be clear, my complaint is not about findings of Rule violations like was done here. My complaint is about finding multiple violations based on identical conduct. For example, the facts here would support findings that Matson violated N.D.R. Prof. Conduct 1.15(a) because he did not hold client property separate from his own. The same facts also support a violation of Rule 1.15(c) that Matson did not deposit the client funds in a trust account. In my view, findings that the identical miscon-

sion should have been years and not months.

[¶ 31] DANIEL J. CROTHERS.

SANDSTROM, Justice, concurring and dissenting.

[¶ 32] I agree with the adoption of the. Disciplinary Board's Findings of Fact and Conclusions of Law. I would conclude that Matson presents an immediate threat to the public by his failure to properly handle client funds. I would impose immediate interim suspension and would take the necessary steps to determine whether greater sanctions, including disbarment, are appropriate.

[¶ 33] DALE V. SANDSTROM.

duct violated multiple Rules, or subsections of rules, does not advance the disciplinary process.