STATE OF MINNESOTA

IN SUPREME COURT

A16-0137

Original Jurisdiction                                             Per Curiam

In re Petition for Disciplinary Action
against Jesse David Matson, a Minnesota                  Filed:  January 18, 2017
Attorney, Registration No. 0389131.                     Office of Appellate Courts

_____

Susan M. Humiston, Director, Joshua H. Brand, Senior Assistant Director, Office of
Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

Jesse D. Matson, Detroit Lakes, Minnesota, pro se.

_____

S Y L L A B U S

Disbarment is the appropriate discipline for an attorney who misappropriated client

funds, made false statements to clients, fabricated a document, neglected and abandoned

numerous clients, failed to abide by court rules, filed a frivolous motion, failed to place

client funds in trust, failed to return unearned fees, used improper fee agreements, failed to

cooperate with the investigation of several disciplinary complaints, and was suspended by

the North Dakota Supreme Court.

Disbarred.

1

O P I N I O N

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility (Director) filed a petition for disciplinary action seeking reciprocal discipline and a supplementary petition for disciplinary action against respondent Jesse David Matson. The Director alleged that Matson committed financial misconduct by misappropriating client funds, failing to place client funds in trust, failing to return unearned fees, and using improper fee agreements. The Director further alleged that Matson committed dishonest conduct by making false statements to clients and fabricating a document. The other alleged misconduct in the petitions included neglecting and abandoning numerous client matters, failing to communicate with numerous clients, failing to abide by court rules, filing a frivolous motion, failing to cooperate with the investigation of several disciplinary complaints, and being placed on suspension by the North Dakota Supreme Court. We deemed the allegations admitted after Matson did not respond to either petition. The sole issue before us is the appropriate discipline. We conclude that it is disbarment.

Matson was admitted to practice law in Minnesota on October 31, 2008, and in North Dakota on October 10, 2011. On August 31, 2015, the North Dakota Supreme Court suspended Matson for 6 months and 1 day. *In re Matson*, 869 N.W.2d 128, 129 (N.D. 2015). The Director filed a petition for disciplinary action seeking reciprocal discipline. *See* Rule 12(d), Rules on Lawyers Professional Responsibility (RLPR) (authorizing the Director to file a petition for discipline upon learning "that a lawyer licensed in Minnesota has been publicly disciplined . . . in another jurisdiction"). After receiving and

2

investigating additional client complaints against Matson, the Director filed a supplementary petition for disciplinary action. Matson did not serve or file an answer to either the petition or the supplementary petition. We therefore deemed the allegations of the petition and supplementary petition admitted. *See* Rule 13(b), RLPR (stating that if the respondent fails to file an answer, "the allegations" in the disciplinary petition "shall be deemed admitted"); *see also* Rule 12(d), RLPR (stating that a final adjudication by another jurisdiction that a lawyer has committed misconduct "shall establish conclusively the misconduct for purposes of disciplinary proceedings in Minnesota"). We also invited the parties to submit written proposals on the appropriate discipline. The Director recommended disbarment, while Matson argued for a suspension and placement on disability inactive status.[1]

Matson's misconduct, occurring between 2013 and 2015, covered seven Minnesota client matters and three North Dakota client matters. We summarize the primary instances of misconduct below.

*Misappropriation*

With respect to the Minnesota misconduct, Matson misappropriated client funds, in violation of Minn. R. Prof. Conduct 8.4(c) and 8.4(d), from his client C.B. C.B. provided Matson with a check for $550 to file a petition for review with our court. Matson submitted

---

[1] Matson did not file his brief in compliance with our order. Matson's brief was due on September 16, 2016. The Director received Matson's brief, dated September 18, 2016, in the mail in an envelope postmarked September 22, 2016. Matson did not file his brief with our court, but the Director forwarded it to our court. Matson also did not appear for oral argument before our court.

the petition to the Clerk of the Appellate Courts on July 21, 2015. But because the petition failed to comply with applicable rules, the clerk rejected the petition and returned it to Matson, along with the $550 filing fee. Matson did not refund the $550 to C.B. or make further attempts to file the petition in compliance with the rules.

*Failure to Safekeep Property and Improper Fee Agreements*

Matson failed to keep his clients' property safe and failed to return unearned fees and client files, in violation of Minn. R. Prof. Conduct 1.15(a), 1.15(c)(3), 1.15(c)(4), and 1.16(d). From 2013 to 2015, Matson did not maintain either a North Dakota or Minnesota IOLTA account. He did not put funds he received from four clients (C.B., K.W., L.I., and T.K.) into a trust account. Matson also failed to provide four clients (C.B., K.W., L.I., and B.F.) with billing statements or invoices accounting for his use of their funds, and, after accepting a total of $9,000 in retainer fees from three clients (K.W., L.I., and T.K.), he did not return any unearned fees to those clients. Finally, Matson failed to return client files to each of his seven Minnesota clients (C.B., M.W., K.W., L.I., B.F., T.K., and R.O.), even after they requested that he do so.

Additionally, Matson entered into improper fee agreements with three of his clients, in violation of Minn. R. Prof. Conduct 1.5(b)(3) and 1.5(c). Matson entered into an oral contingent fee agreement with M.W. in October 2013. His fee agreements with K.W. and L.I. improperly referred to their retainers as "non-refundable."

*Dishonesty*

Matson engaged in dishonesty in the course of his representation of three clients, in violation of Minn. R. Prof. Conduct 4.1 and 8.4(c). When C.B. repeatedly requested that

4

Matson send the district court paperwork to clarify a May 2015 order, Matson told C.B. that he had already done so. Matson provided C.B. with a copy of a letter dated July 12, 2015, that he purportedly sent to the court and to the counsel for C.B.'s ex-husband. Matson, however, fabricated the letter and falsely told C.B. that he had sent the letter to the court and opposing counsel.

In addition, Matson falsely told two other clients that he had scheduled hearings when he had not actually done so. In August and September 2015, Matson told K.W. that he had scheduled hearings by conference call in her matter. But K.W. telephoned the court and was informed that Matson had not filed any papers and no hearing had been scheduled. Similarly, in late February or early March 2014, Matson told B.F. that he had scheduled a hearing to clarify a district court order finding B.F.'s motion to be frivolous and imposing sanctions. There were, however, no court records of any such hearing.

*Neglect and Failure to Communicate*

From 2013 to 2015, Matson neglected seven client matters and failed to communicate with these clients, and in two of these matters, he failed to follow court rules, in violation of Minn. R. Prof. Conduct 1.2(a), 1.3, 1.4, 3.1, 3.2, 3.4(c), and 8.4(d). During the course of his representation of C.B., for example, Matson failed to timely respond to telephone calls, voicemails, e-mails, and texts from C.B.; failed to keep C.B. apprised of the status of her case or provide her with important case-related documents; routinely filed court documents late; and neglected C.B.'s case.

Three of Matson's clients were not aware of any substantive action Matson took on their cases. M.W. retained Matson in October 2013, but Matson did not provide M.W.

5

with any work he had performed or information on any progress he had made on the case. K.W. and L.I. similarly could not confirm that Matson took any substantive action on their cases. L.I. stated that her new attorney had to "start over from the beginning." Although Matson performed some work after T.K. retained him in June 2014, Matson failed to timely communicate with T.K. and neglected his matter.

In January 2014, Matson gave another client, B.F., the wrong date for a hearing in her child-custody matter. Matson did not appear at the hearing, and B.F. traveled from Idaho to Minnesota to attend the hearing after it had already occurred. In that proceeding, the district court ordered monetary sanctions against B.F. and Matson, jointly and severally, for a frivolous motion Matson had filed. Matson filed a notice of appeal of the district court order, without first consulting with B.F. But then Matson did not file any papers with the court of appeals. As a result, the district court ordered monetary sanctions against Matson for "unreasonably contributing to the length and expense of the proceedings to the detriment of the adverse party" by causing the opposing side to incur costs responding to an appeal that never occurred. As of the date of the filing of the supplementary petition, Matson had not paid the order for monetary sanctions.

R.O. retained Matson around late 2014 or early 2015 to appeal his felony conviction in Minnesota state court. Matson failed to timely file the necessary documents and, as a result, on August 5, 2015, the court of appeals dismissed R.O.'s appeal. The court later allowed Matson to reinstate the appeal, and gave directions to Matson on how to proceed with the appeal. Matson did not take any further action. The court of appeals ultimately permitted R.O. to substitute an appellate public defender as R.O.'s counsel.

6

Finally, Matson failed to inform clients (M.W., K.W., T.K., and R.O.) that he had vacated his North Dakota law office in the fall of 2015. Matson's representation of each of the seven Minnesota clients (C.B., M.W., K.W., L.I., B.F., T.K., and R.O.) ended in the same way: Matson stopped responding to client communications. In the B.F. matter, Matson ceased communicating with his client in May 2014, while in the other six matters Matson stopped responding to communications in August or September of 2015.

*Noncooperation*

Finally, Matson did not cooperate with the Director's investigation of client complaints, in violation of Minn. R. Prof. Conduct 8.1(b) and Rule 25, RLPR. Six clients (C.B., M.W., L.I., B.F., T.K., and R.O.) filed complaints with the Director between August 2015 and February 2016. Matson did not respond to any of the notices of investigation sent to him by the Director. In each case, the Director sent another letter to Matson a few weeks later requesting a response to the clients' complaints. Matson did not respond.

*Reciprocal Discipline*

With respect to the North Dakota misconduct, the North Dakota Supreme Court suspended Matson for 6 months and 1 day for misconduct in three North Dakota client matters occurring in or around 2014. *Matson*, 869 N.W.2d at 129. Matson was found in default by the court and so the charges in the petitions for discipline were deemed admitted. *Id.* The court found that Matson failed to provide competent representation, failed to communicate, neglected client matters, failed to deposit client funds into a trust account until earned, and charged unreasonable fees. *Id.* at 130-31.

I.

Because the allegations in the petition and supplementary petition for disciplinary action have been deemed admitted, the only issue before us is the appropriate discipline for Matson's misconduct. *In re Swensen*, 743 N.W.2d 243, 246-47 (Minn. 2007). The Director recommends disbarment. Matson asks us to suspend him and place him on disability inactive status. We have the ultimate responsibility for determining the appropriate disciplinary sanction. *In re Montez*, 812 N.W.2d 58, 68 (Minn. 2012).

The purpose of discipline for professional misconduct is "not to punish the attorney but rather to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *In re Rebeau*, 787 N.W.2d 168, 173 (Minn. 2010). We consider four factors in determining the appropriate disciplinary sanction: "(1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession." *In re Nelson*, 733 N.W.2d 458, 463 (Minn. 2007).[2] In addition, we consider aggravating and mitigating circumstances. *In re Albrecht*, 779 N.W.2d 530, 540 (Minn. 2010). Finally, we

---

[2]     Because this case involves misconduct for which another jurisdiction has already disciplined Matson, in combination with additional acts of misconduct, we will not apply the standard in Rule 12(d), RLPR, for determining whether to impose reciprocal discipline. *Id.* (authorizing the court to "impose the identical discipline" imposed in the other jurisdiction, with exceptions). Instead, we will determine the appropriate sanction by considering all of the misconduct Matson has committed. *See In re Varriano*, 755 N.W.2d 282, 292 (Minn. 2008) (stating in a case involving reciprocal discipline and additional acts of misconduct that "a more serious sanction is warranted" than imposed by the other jurisdiction).

8

look to similar cases in seeking to impose consistent discipline. *Id.* We address these factors in turn.

A.

The nature of Matson's misconduct is serious and extensive, encompassing various types of misconduct and involving 10 client matters, 7 in Minnesota and 3 in North Dakota. Matson's misappropriation of C.B.'s $550 filing fee, by itself, is " 'particularly serious misconduct and usually warrants disbarment absent clear and convincing evidence of substantial mitigating factors.' " *In re Garcia*, 792 N.W.2d 434, 443 (Minn. 2010) (quoting *In re Rhodes*, 740 N.W.2d 574, 579 (Minn. 2007) (internal quotation marks omitted); *see In re Lundeen*, 811 N.W.2d 602, 608 (Minn. 2012) (disbarring an attorney who misappropriated client funds by performing no work on a matter and not returning unearned funds to the client, among other violations). As explained below, Matson did not provide clear and convincing evidence of mitigating factors.

Further, Matson engaged in other types of very serious misconduct. He engaged in a pattern of neglect and abandonment involving 10 clients. *See Rhodes*, 740 N.W.2d at 578 ("We have repeatedly warned that '[a] continuing pattern of client neglect is serious misconduct often warranting indefinite suspension by itself'. . . and that more 'extreme' cases involving client neglect and failure to communicate with clients may merit disbarment." (citations omitted)). Matson committed serious financial misconduct by accepting a total of $9,000 from three clients as retainers but failing to account for any legal services provided or refund unearned fees. *See In re Taplin*, 837 N.W.2d 306, 312 (Minn. 2013) (stating that the lawyer's failure "to return $5,225 in advance fees after she

9

performed little work for two clients" was serious misconduct "because, from the clients' perspectives, they were deprived of the use of their funds without any explanation"); *Rhodes*, 740 N.W.2d at 578 (stating that accepting more than $5,000 from his clients without accounting for any of the legal services provided was "a serious violation of the rules of professional conduct and merits severe discipline"). And Matson failed to cooperate in six disciplinary investigations. *See, e.g.*, *In re Pitera*, 827 N.W.2d 207, 211 (Minn. 2013) (stating that noncooperation with the disciplinary process itself may warrant indefinite suspension and that it increases the sanction when combined with other misconduct).

B.

To determine the cumulative weight of an attorney's violations, we "distinguish between a 'brief lapse in judgment' or 'a single, isolated incident' and 'multiple instances of mis[conduct] occurring over a substantial amount of time.' " *In re Murrin*, 821 N.W.2d 195, 208 (Minn. 2012) (alteration in original) (quoting *In re Fairbairn*, 802 N.W.2d 734, 743 (Minn. 2011)). The "cumulative weight and severity of multiple disciplinary rule violations may compel severe discipline even when a single act standing alone would not have warranted such discipline." *In re Oberhauser*, 679 N.W.2d 153, 160 (Minn. 2004).

Matson's misconduct occurred over the course of 3 years. Further, while Matson's misappropriation of client funds appears to be a single incident, his other misconduct involved multiple clients and multiple rule violations. *See In re Ulanowski*, 800 N.W.2d 785, 801 (Minn. 2011) (stating that several different types of misconduct committed over the course of more than 3 years "merit[] the imposition of a serious sanction"). Matson's

failure to cooperate during the disciplinary investigation also constitutes "repeated misconduct over the course of many months." *In re Schulte*, 869 N.W.2d 674, 678 (Minn. 2015).

## C.

Next, we consider the harm to the public and legal profession by looking to the number of clients harmed and the extent of their injuries. *In re Coleman*, 793 N.W.2d 296, 308 (Minn. 2011). Matson caused monetary harm to four clients by misappropriating client funds or failing to refund unearned fees. In addition, all 10 clients were harmed by Matson's delays, abandonment of their cases, and failure to return their files. For example, Matson jeopardized R.O.'s appeal of a felony conviction by failing to file necessary documents. Similarly, Matson left B.F. with a judgment of monetary sanctions that a district court ordered against Matson and B.F., jointly and severally, for filing a frivolous motion.

Matson's misconduct also caused substantial harm to the legal profession. Misappropriation of client funds is a breach of trust that harms not only the affected client but also the public and the legal profession, *see In re Brost*, 850 N.W.2d 699, 704 (Minn. 2014), and client neglect undermines the public's confidence in the legal profession, harming both the public and the profession, *see Albrecht*, 779 NW.2d at 541-42. Finally, Matson's failure to cooperate with the disciplinary investigations harmed the legal profession by undermining the public's confidence in the ability of the profession to self-regulate. *Brost*, 850 N.W.2d at 705.

11

D.

In addition to the four factors discussed above, we also weigh aggravating and mitigating factors to determine the appropriate discipline to impose. *Fairbairn*, 802 N.W.2d at 742. The Director does not allege any aggravating or mitigating factors. Because Matson did not respond to the petition or supplementary petition for disciplinary action, he did not raise any mitigating factors either.

Nevertheless, Matson's brief describes his struggles with his mental health. Matson wrote that in the fall of 2015, he "suffered severe depression and PTSD as diagnosed by [his] psychologist," causing him to lose "the ability to function utterly and completely." Matson stated that he faced "[a]nxiety" and noted his "physical health suffered as a result." Matson also stated that he was "in no condition to answer the Board's complaint." Matson explained that after several months of searching for a local psychologist who could help, he found one and has now begun the process of recovering.

The Director argues that because Matson did not respond to the petitions, we may not consider any mitigating factors Matson attempts to raise now. We agree. Rule 13(b), RLPR, states that if a respondent to a disciplinary petition fails to file a timely answer, the allegations in the petition are deemed admitted and we may proceed to the disposition of the matter under Rule 15. *See* Rule 15, RLPR (setting forth various actions our court may take in attorney discipline proceedings). The time for raising defenses under the rules is in the answer, which is due 20 days after service of the petition. Rule 13(a), RLPR. As a result, we have declined to consider mitigating factors when an attorney does not answer a disciplinary petition and the record contains no factual findings on any potential mitigation.

12

*See, e.g.*, *Schulte*, 869 N.W.2d at 679 (rejecting the attorney's request to consider remorse and depression as mitigating factors "[b]ecause he failed to answer the disciplinary petition, [and] there are no factual findings in the record regarding any potential mitigation"); *In re Ladd*, 463 N.W.2d 281, 283 (Minn. 1990) ("[T]his court is not an original factfinding body in attorney discipline matters, and respondent's failure to answer the petition with any mitigating circumstances bars our consideration of such issues."). Because Matson did not file a response and we have deemed the allegations in the petitions admitted, he may not now raise mitigating factors.[3]

E.

Finally, we consider similar cases for guidance, but we ultimately determine the proper discipline "based on the unique facts and circumstances of each case." *Rebeau*, 787 N.W.2d at 174. In support of the Director's position that Matson should be disbarred, the Director cites *In re Grzybek*, 567 N.W.2d 259 (Minn. 1997). In that case, although the attorney engaged in many types of misconduct, we stated that disbarment was warranted because he had misappropriated $750 in client funds and later failed to return the money. *Id.* at 265. Grzybek failed to return $250 remitted by the client to pay a filing fee, and additionally did not pay back $500 that the client had given Grzybek to use for court-ordered attorney fees and costs. *Id.* at 260.

Additional cases support the Director's recommendation of disbarment. *See In re Swokowski*, 796 N.W.2d 317, 320-24 (Minn. 2011) (disbarring an attorney who

---

[3]    This conclusion also applies to Matson's allegation that his "work product suffered" because he lost his entire staff twice in 2015.

13

misappropriated $1,000 from a client, failed to notify clients of a suspension, engaged in a pattern of client neglect, failed to communicate with clients, failed to return the property of seven clients, failed to pay a law-related judgment, and failed to cooperate with the Director); *In re Rodriguez*, 783 N.W.2d 170, 170 (Minn. 2010) (order) (disbarring an attorney who misappropriated $650 from clients, misrepresented the terms of agreements signed by clients, and did not show mitigating circumstances); *In re Ostroot*, 565 N.W.2d 431, 431 (Minn. 1997) (order) (disbarring an attorney who misappropriated $1,200 in client funds, engaged in client neglect, and made a misrepresentation in another matter); *In re Pang*, 522 N.W.2d 921, 921 (Minn. 1994) (order) (disbarring an attorney who, over a period of years, misappropriated client funds, engaged in repeated and continued neglect of client matters, and failed to cooperate with the disciplinary investigation); *In re Walker*, 461 N.W.2d 219, 222-23 (Minn. 1990) (disbarring an attorney who misappropriated $1,600 in client funds, neglected eight client matters, failed to return unearned retainers, forged a client's signature, and failed to cooperate with the Director).

Matson did not cite legal support for his request for an indefinite suspension and transfer to disability inactive status. The Director correctly notes that in only a few instances have we imposed discipline less than disbarment in a misappropriation case when the record does not reveal substantial mitigating factors. *See In re Trimble*, 822 N.W.2d 291, 291-92 (Minn. 2012) (order) (imposing an indefinite suspension for a minimum of 2 years on an attorney who misappropriated a $100 advance from a client, neglected and failed to communicate with a client, failed to appear in court, and failed to cooperate with the Director's investigation); *In re Brooks*, 696 N.W.2d 84, 86-87 (Minn. 2005) (imposing

14

an indefinite suspension for a minimum of 2 years on an attorney who neglected two matters and failed to communicate with two clients, misappropriated a $200 filing fee, failed to maintain trust account books and records, and failed to cooperate with the Director).

An indefinite suspension would not be sufficient discipline in this case. Matson's misconduct affected more clients and is more wide-ranging than the misconduct in either *Trimble* or *Brooks*. The misconduct in those cases involved only one or two clients, *see Trimble*, 822 N.W.2d at 291; *Brooks*, 696 N.W.2d at 86-87, whereas Matson's misconduct involved 10 clients and more types of misconduct, including affirmative misrepresentations, failing to return unearned fees, failing to follow court rules, and filing a frivolous motion. And although we noted that the extent of the harm to Brooks' clients was unclear from the record, *see Brooks*, 696 N.W.2d at 88-89, the harm to Matson's 10 clients in this case is clear. Given the extensive nature and cumulative weight of Matson's misconduct, including misappropriation of client funds; the harm he caused to his clients, the public, and the legal profession; and the absence of any mitigating factors, we conclude that disbarment is the appropriate sanction.

Accordingly, respondent Jesse David Matson is disbarred from the practice of law in the State of Minnesota, effective on the date of the filing of this opinion. Respondent shall comply with Rule 26, RLPR (requiring notice of disbarment to clients, opposing counsel, and tribunals). Respondent shall pay $900 in costs pursuant to Rule 24, RLPR.

Disbarred.