STATE OF MINNESOTA

IN SUPREME COURT

A24-0457

Original Jurisdiction                                                    Per Curiam

In re Petition for Disciplinary Action against            Filed:  March 26, 2025
Stephen J. Baird, a Minnesota Attorney,                 Office of Appellate Courts
Registration No. 0398840.

_____

Susan M. Humiston, Director, Kristine Nelson Fuge, Senior Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

Stephen J. Baird, Englewood, Colorado, pro se.

_____

S Y L L A B U S

1.      An attorney who is licensed to practice law and is practicing law in Minnesota at the time the Director of the Office of Lawyers Professional Responsibility learns that the attorney has been publicly disciplined or is subject to public disciplinary charges in another jurisdiction is subject to reciprocal discipline under Rule 12(d), Rules on Lawyers Professional Responsibility.

2.      Reciprocal discipline of disbarment under Rule 12(d), Rules on Lawyers Professional Responsibility, is appropriate where an attorney was disbarred three times and suspended for more than six months by another jurisdiction for failing to act with reasonable diligence and promptness, failing to reasonably communicate regarding clients'

1

cases and to respond to clients' reasonable requests for information, failing to keep clients reasonably informed about the status of a matter, providing misinformation about the statuses of clients' cases, failing to refund unused fees or return clients' files and records after the termination of representation, failing to take remedial action with respect to an employee's lack of reasonable diligence and communication, and failing to take reasonable steps to protect clients' interests by making timely transitions of their cases to subsequent counsel.

Disbarred.

## O P I N I O N

PER CURIAM.

This case concerns the appropriate discipline for respondent attorney Stephen J. Baird. Baird has been disbarred three times and suspended for more than six months by the North Dakota Supreme Court.[1] Baird has also been disbarred by the Department of Homeland Security, the Board of Immigration Appeals, and the federal immigration courts.

---

[1] North Dakota Rule for Lawyer Discipline 1.1(C) allows the court to subsequently disbar an already-disbarred or -suspended attorney for misconduct that occurs before or after the original disciplinary action. N.D.R. Law. Discipline 1.1(C) ("Any lawyer admitted to practice law in this state (including any formerly admitted lawyer with respect to acts committed prior to suspension, disbarment . . . , or with respect to acts subsequent thereto which amount to the practice of law or which constitute misconduct subject to sanctions) . . . is subject to the disability and disciplinary jurisdiction of the court under these rules."). When such a situation arises, the North Dakota Supreme Court has extended the length of time that a disbarred or suspended attorney must wait before filing a petition for reinstatement. *See In re Kraemer*, 411 N.W.2d 71, 75 (N.D. 1987) (holding that an extension of the period of ineligibility for reinstatement is an appropriate disciplinary sanction for an already-disbarred attorney); *In re Teevens*, 499 N.W.2d 887, 888 (N.D. 1993) (extending the period of time an already-disbarred attorney was ineligible for reinstatement).

2

The Director of the Office of Lawyers Professional Responsibility (the Director) brought a petition for disciplinary action against Baird under Rule 12(d) of the Rules on Lawyers Professional Responsibility (RLPR), seeking reciprocal discipline in the form of disbarment. Because we find that disbarment is appropriate reciprocal discipline for Baird's misconduct, we grant the Director's petition and disbar Baird.

## FACTS

Pursuant to Minnesota Rule on Lawyers Professional Responsibility 12(d), "[u]nless the Court determines otherwise, a final adjudication in another jurisdiction that a lawyer had committed certain misconduct shall establish conclusively the misconduct for purposes of disciplinary proceedings in Minnesota." The following facts have been established in Baird's other disciplinary proceedings before the Supreme Court of North Dakota.

### *First Disbarment*

The facts of Baird's disbarment can be found in *In re Baird (Baird I)*, 977 N.W.2d 702 (N.D. 2022). In February 2020, M.M. retained Baird for help obtaining citizenship and immigration status. In March 2020, Baird informed M.M. that he was closing his office due to the COVID-19 pandemic and would not be taking phone calls, but that he would respond to texts or emails. Baird subsequently failed to communicate with M.M. for six months, despite M.M.'s repeated calls, texts, emails, and written messages slipped under Baird's office door. In August 2020, M.M. demanded a refund of his retainer fee and filed a disciplinary complaint against Baird with the State of North Dakota, which spurred Baird to resume communication with M.M. Baird then filed M.M.'s application for

3

citizenship with the United States Citizenship and Immigration Services (USCIS), but failed to tell M.M. about the filing. M.M. separately reached out to USCIS and learned that his application was accepted. Baird subsequently withdrew his representation of M.M. but did not refund M.M.'s fees or return his files.

In the spring of 2020, C.G. retained Baird to help with an application for asylum for himself, his wife, and his children. C.G. provided Baird with his family's original passports, as well as a retainer fee. In September 2020, Baird told C.G. that he had filed the asylum application with USCIS. Just as with M.M., Baird failed to communicate with C.G. for several months, despite C.G.'s repeated attempts at outreach, including written notes slipped under Baird's office door. Baird told C.G. in November and December 2020 that he was still awaiting action from USCIS and had no further information. In January 2021, Baird informed C.G. that he had no status updates on his asylum application and could not provide a receipt that USCIS had received it. C.G. reached out to USCIS himself and learned that no application had been received under C.G.'s passport number. C.G.'s deadline to apply for asylum was fast approaching in March 2021, so he asked Baird to refile the application, which C.G. mailed himself. The North Dakota Supreme Court concluded from these facts that "Baird did not complete and submit the asylum application in September 2020 as he told [C.G.]." *Baird I*, 977 N.W.2d at 706.

In August 2020, D.O. retained Baird for an adjustment of status with USCIS to obtain a green card, get a work authorization, and get a travel permit. Baird accepted a retainer fee and $1,760 for the USCIS filing fee. Baird told D.O. in September 2020 that he had submitted D.O.'s application to USCIS, and then proceeded to fail to communicate

4

with D.O. for the next six months despite D.O.'s numerous attempts at outreach. Baird never provided D.O. with a mailing receipt or receipt from USCIS confirming that the application was received. In February 2021, D.O. obtained a refund of the filing fee that he had paid to Baird and submitted the application to USCIS himself. D.O. never received a draft of any documents or a copy of his file. As with C.G., the North Dakota Supreme Court concluded that "Baird did not complete or file the application for [D.O.'s] adjustment of status with the USCIS as he told [D.O.]." *Baird I*, 977 N.W.2d at 707.

On April 27, 2021, following M.M.'s complaint to the state, North Dakota state disciplinary counsel filed formal charges of misconduct against Baird. Baird did not respond to the petition. On August 2, 2021, a hearing panel issued default findings of fact, conclusions of law, and recommendations for discipline. The North Dakota Supreme Court remanded to the panel for additional findings of fact, and on March 9, 2022, the panel conducted a hearing about Baird's conduct that consolidated complaints from M.M., C.G., and D.O. On May 11, 2022, the panel issued a report with amended findings of fact and recommended disbarment and a refund of M.M.'s, C.G.'s, and D.O.'s retainer fees. The panel's report was properly served on Baird and was subsequently considered by the North Dakota Supreme Court. Baird provided no objections to the report.

On July 21, 2022, Baird was disbarred by the North Dakota Supreme Court and prohibited from seeking reinstatement for at least five years. *Baird I*, 977 N.W.2d at 711. The court determined that Baird violated Rule 1.3, North Dakota Rules of Professional Conduct (N.D.R. Prof. Conduct) ("A lawyer shall act with reasonable diligence and promptness in representing a client."); Rule 1.4(a), N.D.R. Prof. Conduct ("A lawyer

5

shall . . . make reasonable efforts to keep the client reasonably informed about the status of a matter; [and] promptly comply with the client's reasonable requests for information[.]"); and Rule 1.16(e), N.D.R. Prof. Conduct ("Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred.").[2]  *See Baird I*, 977 N.W.2d at 707–09.

The court adopted the hearing panel's findings of four aggravating factors and no mitigating factors. *See id.* at 709–10.  The court considered it an aggravating factor that Baird had previously received a public admonition in February 2021 for a violation of Rule 1.4, N.D.R. Prof. Conduct, for failing to adequately communicate with clients in another case. *Id.* at 710.  The court also found that Baird violated Standard 9.22(c), North Dakota Standards for Imposing Lawyer Sanctions (N.D. Stds. Imposing Law. Sanction) ("Aggravating factors include . . . a pattern of misconduct[.]"); Standard 9.22(d), N.D. Stds. Imposing Law. Sanction ("multiple offenses"); and Standard 9.22(h), N.D. Stds. Imposing Law. Sanction ("vulnerability of victim").[3]  *Baird I*, 977 N.W.2d at 710.  Baird

---

[2]     These rules most closely mirror Minnesota Rules of Professional Conduct 1.3, 1.4, 7.1, 8.4(c), 8.4(d), 1.16(d), and 1.16(e).

[3]     The court also found that "Baird's violations of N.D.R. Prof. Conduct 1.4 and 1.16(e) are both aggravating factors under N.D. Stds. Imposing Lawyer Sanctions 9.22(c) [('a pattern of misconduct')]." *Baird I*, 977 N.W.2d at 710.

never sought reinstatement in North Dakota and did not report the disbarment to the Director.

### Reciprocal Discipline

On September 8, 2022, Baird was reciprocally disbarred by the Board of Immigration Appeals, the immigration courts, and the Department of Homeland Security. *See In re Baird (Baird IV)*, 996 N.W.2d 308, 308 (N.D. 2023). Baird did not report the disbarments to the Director.

### Second Disbarment

On December 8, 2022, the North Dakota Supreme Court disbarred Baird for a second time and prohibited him from seeking reinstatement for five years. *See In re Baird (Baird II)*, 985 N.W.2d 56, 57 (N.D. 2022). In 2017, a woman retained Baird, seeking an I-360 green card petition predicated on domestic violence by her ex-husband, who is a U.S. citizen, and assistance in removal proceedings.[4] It took Baird four years, until September 16, 2021, to file the I-360 petition, which contained minimal information and was not provided to the client. The client hired subsequent counsel, who was unable to reach Baird despite numerous attempts at communication. USCIS had set a deadline to respond to a request for evidence in the case for October 18, 2021. Baird did not inform

---

[4] An I-360 Petition for Amerasian, Widow(er), or Special Immigrant Form allows for a "[Violence Against Women Act] self-petitioning spouse of an abusive U.S. citizen" to petition for a Green Card if they have been "battered by or have been the subject of extreme cruelty perpetrated by: [their] U.S. citizen . . . spouse during the marriage." U.S. Dep't Homeland Sec., U.S. Citizenship & Immigr. Servs., OMB No. 1615-0020, Form I-360, Instructions for Petition for Amerasian, Widow(er) or Special Immigrant 6 (2018).

subsequent counsel of the deadline and did not turn over the client's incomplete file until October 19, 2021, which was past the filing deadline.

The state disciplinary counsel brought a petition for discipline against Baird. Because Baird did not respond to the petition, the hearing panel issued default findings of fact and recommendations for discipline. It concluded that Baird violated Rule 1.3, N.D.R. Prof. Conduct, by failing to act with reasonable diligence and promptness; Rule 1.4, N.D.R. Prof. Conduct, by failing to keep the client reasonably informed about the status of a matter and by failing to respond to reasonable requests for information; and Rule 1.16(e), N.D.R. Prof. Conduct, by failing to take reasonable steps to protect the client's interests by making a timely transition of her cases to subsequent counsel as requested by the client and by failing to provide a complete copy of the client file to alternate counsel.[5] *See Baird II*, 985 N.W.2d at 56–57. The panel also made findings of three aggravating factors: Standard 9.22(a), N.D. Stds. Imposing Law. Sanction ("prior disciplinary offenses"); Standard 9.22(c), N.D. Stds. Imposing Law. Sanction ("a pattern of misconduct"); and Standard 9.22(h), N.D. Stds. Imposing Law. Sanction ("vulnerability of victim"). *See id.* at 57. The North Dakota Supreme Court adopted the hearing panel's findings and conclusions and ordered Baird to be disbarred. Baird did not inform the Director of the proceedings and did not seek reinstatement.

---

[5]   These rules most closely mirror Minnesota Rules of Professional Conduct 1.3, 1.4, 1.16(d), and 1.16(e).

8

*Suspension*

On August 17, 2023, the North Dakota Supreme Court suspended Baird for six months and one day. *See In re Baird (Baird III)*, 994 N.W.2d 377, 379 (N.D. 2023). A married couple retained Baird to assist in their filing for bankruptcy. He delegated the file to an associate attorney, who failed to act reasonably and diligently. Baird took over the case himself, and also failed to act diligently by not keeping the clients informed about the status of their matter; failing to respond to reasonable requests for information; failing to protect the clients' interests after the attorney-client relationship ended; and failing to take remedial action for the associate attorney's transgressions.

The state disciplinary counsel filed a petition for discipline, to which Baird did not respond, and a hearing panel issued a report of default findings of fact and recommendations for discipline. It found that Baird violated Rule 1.3, N.D.R. Prof. Conduct (diligence); Rule 1.4, N.D.R. Prof. Conduct (communication); Rule 1.16(e), N.D.R. Prof. Conduct (failing to protect clients' best interests after termination of representation); and Rule 5.1(c)(2), N.D.R. Prof. Conduct ("A lawyer shall be responsible for another lawyer's violation of [the Rules of Professional Conduct] if . . . the lawyer . . . has direct supervisory authority over the other lawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated, but fails to take reasonable remedial action.").[6] *See Baird III*, 994 N.W.2d at 379. The panel considered as aggravating factors Standard 9.22(a), N.D. Stds. Imposing Law. Sanction ("prior disciplinary offenses");

---

[6]     These rules most closely mirror Minnesota Rules of Professional Conduct 1.3, 1.4, 1.16(d), 1.16(e), and 5.1(c).

9

Standard 9.22(c), N.D. Stds. Imposing Law. Sanction ("a pattern of misconduct"); and Standard 9.22(j), N.D. Stds. Imposing Law. Sanction ("indifference to making restitution"). *See id.* Despite Baird's failure to respond to the petition for discipline or to submit evidence of mitigating factors, the panel found two mitigating factors: Standard 9.32(k), N.D. Stds. Imposing Law. Sanction ("imposition of other penalties or sanctions"); and Standard 9.32(m), N.D. Stds. Imposing Law. Sanction ("remoteness of prior offenses"). *See id.* The supreme court adopted the hearing panel's findings and conclusions and ordered Baird suspended for six months and one day and to pay restitution to the clients. *Id.* Baird did not inform the Director of the discipline he received and did not seek reinstatement.

### *Third Disbarment*

On September 28, 2023, the North Dakota Supreme Court disbarred Baird for a third time, with a prohibition on reinstatement for five years. *See Baird IV*, 996 N.W.2d at 309. Another client had retained Baird for help with an I-360 green card petition based on domestic violence, which was required to be filed within two years of the client's divorce. Baird failed to communicate with the client, misrepresented facts when he did communicate with him, did not respond to USCIS's requests for evidence, and ultimately failed to notify the client that his petition had been denied by USCIS because of Baird's failure to respond to the evidentiary request. Baird also failed to notify USCIS that his office address had changed, which led to further delays in receiving notice that the client's petition had been denied. Following the termination of representation, the client did not receive a copy of his file or a refund of his retainer fee.

10

The state disciplinary counsel brought a petition for discipline against Baird. The state disciplinary counsel was unable to personally serve Baird with the petition, so service was made on the Clerk of the Supreme Court.[7] The hearing panel issued default findings of fact and recommendations for discipline, finding that Baird violated Rule 1.3, N.D.R. Prof. Conduct (diligence); Rule 1.4, N.D.R. Prof. Conduct (communication); and Rule 1.16(e), N.D.R. Prof. Conduct (protecting the client's best interests after termination of representation).[8] *See Baird IV*, 996 N.W.2d at 309. The panel also found as aggravating factors his prior disciplinary offenses, *see* Standard 9.22(a), N.D. Stds. Imposing Law. Sanction, and a pattern of misconduct, *see* Standard 9.22(c), N.D. Stds. Imposing Law. Sanction. *See Baird IV*, 996 N.W.2d at 309. The North Dakota Supreme Court adopted the panel's findings, disbarred Baird, and ordered him to pay restitution to the client. Baird did not disclose the discipline to the Director or seek reinstatement in North Dakota.

### *Director's Petition for Reciprocal Discipline*

On August 21, 2023, the Director independently learned of Baird's discipline in North Dakota. The Director then filed a petition for reciprocal discipline of disbarment in this court pursuant to Rule 12(d), RLPR. On April 2, 2024, this court ordered Baird to submit a response as to whether reciprocal discipline was warranted. Baird failed to respond by the end of the 30-day deadline imposed by the order. On May 31, 2024, the

---

[7] This method of service is authorized by Rule 1, North Dakota Admission to Practice Rules, which states that "the Clerk of the Supreme Court [is designated] as the applicant's agent for service of process for all purposes."

[8] These rules most closely mirror Minnesota Rules of Professional Conduct 1.3, 1.4, 1.16(d), and 1.16(e).

Director filed a memorandum of law in support of reciprocal discipline. Baird did not file a response. This court held oral argument on the matter on November 12, 2024. Baird did not attend, nor did any counsel on his behalf. The Director has never received any communication from Baird regarding the petition for reciprocal discipline.

**ANALYSIS**

Under Rule 12(d), RLPR, the Director may petition for reciprocal discipline based on her knowledge, from any source, "that a lawyer licensed to practice in Minnesota has been publicly disciplined . . . in another jurisdiction." We may impose reciprocal discipline "unless it appears that discipline procedures in the other jurisdiction were unfair, or the imposition of the same discipline would be unjust or substantially different from discipline warranted in Minnesota." *Id.*; *accord In re Jensen*, 12 N.W.3d 731, 737 (Minn. 2024). This court bears the "ultimate responsibility" to determine the proper discipline. *In re Kaszynski*, 620 N.W.2d 708, 713 (Minn. 2001). In deciding what discipline to impose, we have held that the purposes of disciplinary sanctions are "to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *In re Oberhauser*, 679 N.W.2d 153, 159 (Minn. 2004). "The purpose for imposing identical disciplinary sanctions is to prevent a sanctioned attorney from avoiding the consequences of misconduct by simply moving his or her practice to another state." *In re Meaden*, 628 N.W.2d 129, 132 (Minn. 2001) (citation omitted) (internal quotation marks omitted).

12

I.

We turn first to the question of whether the North Dakota proceedings against Baird were fair. *See* Rule 12(d), RLPR. This court has consistently held that another jurisdiction's disciplinary proceedings are fair if the attorney is given notice of the proceedings and an opportunity to "present evidence of good character and other mitigating circumstances." *In re Koss*, 572 N.W.2d 276, 277 (Minn. 1997). We "review the record of the underlying proceedings to see if the lawyer being disciplined received notice of the allegations against him and whether he was provided an opportunity to respond to those allegations." *In re Schmidt*, 586 N.W.2d 774, 775–76 (Minn. 1998).

The Director argued that North Dakota's processes are fair, and we agree. This court has previously found that North Dakota's disciplinary processes are fair. *See, e.g.*, *id.* at 776; *In re Keller*, 656 N.W.2d 398, 399 (Minn. 2003); *In re Fahrenholtz*, 896 N.W.2d 845, 847 (Minn. 2017); *In re Overboe*, 867 N.W.2d 482, 488 (Minn. 2015).

Baird did not participate in any of the four North Dakota disciplinary actions against him. However, "an attorney's decision not to participate in the disciplinary proceedings in another jurisdiction is not relevant to our determination of the fairness of those proceedings." *In re Wolff*, 810 N.W.2d 312, 316 (Minn. 2012). We have repeatedly determined that where an attorney was properly served with notice as to the proceedings against him—regardless of his response—then due process has been satisfied. *See, e.g.*, *Keller*, 656 N.W.2d at 401. The record in this case is clear that Baird received proper notice of each of the actions against him. *Baird I*, 977 N.W.2d at 705; *Baird II*, 985 N.W.2d at 57; *Baird III*, 994 N.W.2d at 378; *Baird IV*, 996 N.W.2d at 309 (stating that disciplinary

13

counsel was unable to personally serve Baird, but pursuant to North Dakota rules, the petition was served on the Clerk of the Supreme Court). Even where Baird did not present mitigating factors on his own behalf, the court carefully considered and found that there were two mitigating factors that were appropriate in Baird's suspension case. *See Baird III*, 994 N.W.2d at 379. We therefore conclude that North Dakota's procedures were fair in each of Baird's discipline cases.

II.

We next turn to whether "the imposition of the same discipline would be unjust or substantially different from discipline warranted in Minnesota." Rule 12(d), RLPR. Because Baird has not participated in Minnesota's disciplinary proceedings, and because Rule 12(d), RLPR, provides that we can use the other jurisdiction's findings, we find that the facts of Baird's misconduct have been conclusively established. *See Wolff*, 810 N.W.2d at 317–18 (deeming out-of-jurisdiction misconduct established where the respondent did not respond to Minnesota's disciplinary proceedings).

The first step in our Rule 12(d) analysis is determining whether "we would impose *some* discipline" for the alleged misconduct. *Jensen*, 12 N.W.3d at 740. If we would not otherwise impose any discipline, then reciprocal discipline would be "unjust." Rule 12(d), RLPR. In *In re Otis*, we held that imposing reciprocal discipline would be unjust where the underlying cause of the troubling behavior had been addressed by medical treatment. 582 N.W.2d 561, 565 (Minn. 1998). In *In re Sklar*, we held that reciprocal discipline may be unjust where the lawyer can identify specific prejudice arising from a long delay between the underlying misconduct and the imposition of the discipline. 929 N.W.2d 384,

14

390 (Minn. 2019). And in *Jensen*, we reiterated that reciprocal discipline would be unjust "if the lawyer shows that the circumstances that caused the misconduct have changed . . . and the discipline imposed in the other jurisdiction is no longer necessary to protect the public." 12 N.W.3d at 738–39.

None of those circumstances apply here. There is no great delay between the underlying events of Baird's misconduct and the Director's petition for reciprocal discipline in Minnesota. *See Sklar*, 929 N.W.2d at 390 (finding "no concerning gaps in the procedural history of this case" where the Director's petition for reciprocal discipline was filed one-and-one-half years after discipline was first imposed in California). Baird did not advance any argument, nor did the North Dakota Supreme Court find, that the circumstances giving rise to Baird's misconduct have changed or that he is no longer a danger to the public. To the contrary, the nature of Baird's actions indicate that public safety continues to be a concern. We therefore determine that imposing reciprocal discipline would not be unjust.

The second step in our analysis is whether reciprocal discipline in the form of disbarment would be substantially different than what we would impose in Minnesota. *See Jensen*, 12 N.W.3d at 740. There are four factors that guide us in what discipline to impose: "(1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession." *In re Ulanowski*, 800 N.W.2d 785, 799 (Minn. 2011) (quoting *In re Nelson*, 733 N.W.2d 458, 463 (Minn. 2007)). We also weigh any aggravating or mitigating factors that are found. *Id.* "This does not mean that we may only impose reciprocal discipline if we would impose

15

discipline identical to that imposed in the other jurisdiction." *Jensen*, 12 N.W.3d at 740. Rather, reciprocal discipline in the form of disbarment must be "significantly" outside the range of discipline we would otherwise impose. Rule 12(d), RLPR.

Our decision in *In re Igbanugo*, 989 N.W.2d 310, 324 (Minn. 2023), is instructive in this matter. In *Igbanugo*, the respondent attorney consistently failed to perform work for clients in immigration matters, including failing to act on outstanding visa petitions, failing to file permanency petitions after telling the clients he would file them, delaying filing paperwork for over two years, and failing to refund fees after the termination of representation. *Id.* at 318–20. We ultimately imposed suspension for a minimum of ten months, but in so doing, we recognized that misconduct in immigration matters has "potentially grave consequences" because it can put clients "at risk for deportation or removal." *Id.* at 329 (citing *In re Fru*, 829 N.W.2d 379, 388–89 (Minn. 2013)) (internal quotation marks omitted).

Our decision in *In re Fru* is likewise instructive. Fru engaged in a "pattern of incompetence, neglect, and noncommunication" in immigration matters, including by misrepresenting the status of a client's I-360 petition. *Fru*, 829 N.W.2d at 389. We indefinitely suspended Fru for a minimum of two years. *Id.* at 391.

We must weigh Baird's misconduct as a whole. *Oberhauser*, 679 N.W.2d at 160 ("[T]he cumulative weight and severity of multiple disciplinary rule violations may compel severe discipline even when a single act standing alone would not have warranted such discipline."). Here, Baird's misconduct dates back at least as far as 2017, *see Baird II*, 985 N.W.2d at 56, and was at least as severe as in *Igbanugo* and *Fru*. His failures impacted

16

at least seven clients, as well as C.G.'s wife and children who were also seeking asylum. *See In re Matson*, 889 N.W.2d 17, 23, 26 (Minn. 2017) (disbarring an attorney for neglect and abandonment of ten clients). In one case, Baird neglected to file a client's I-360 petition for over four years, which is much longer than the two-year delay in *Igbanugo*.

We have disbarred or indefinitely suspended attorneys who engaged in repeated instances of client neglect and failure to communicate. *See Schmidt*, 586 N.W.2d at 776, 777 (reciprocally disbarring attorney who converted his clients' funds for his own use; neglected client matters; failed to communicate with his clients; practiced law while on suspension in Minnesota; lied to his clients, creditors of his clients, and a Minnesota court; and failed to cooperate with the North Dakota disciplinary board); *In re Fallon*, 389 N.W.2d 509, 511 (Minn. 1986) (imposing indefinite suspension for failure to answer letters and return calls); *In re Weyhrich*, 339 N.W.2d 274, 279 (Minn. 1983) (imposing disbarment for gross neglect of client matters, failure to communicate with clients, and failure to cooperate). Moreover, the North Dakota court found that Baird engaged in affirmative misrepresentations when he "did not complete and submit the asylum application[s] in September 2020 as he told [C.G.]" and D.O. *Baird I*, 977 N.W.2d at 706, 707. This court takes instances of untruthfulness seriously. *See In re Jones*, 383 N.W.2d 303, 307 (Minn. 1986) ("We have not hesitated to disbar attorneys for failure to maintain the profession's high standards of truthfulness."). We have also disbarred attorneys for patterns of misconduct including client neglect, abandonment of practice, and failure to return client files, all of which are forms of misconduct that the North Dakota court found in Baird's cases. *See In re Harp*, 560 N.W.2d 696, 697, 701 (Minn. 1997) (disbarring an

17

attorney for, among other misconduct, client neglect and noncommunication, failure to

return client files, failure to return unearned fees, the abandonment of his law practice, and

noncooperation with the Director).

As relevant to the cumulative weight of the violations, Baird's misconduct rises

above the level of a "brief lapse in judgment" or "a single, isolated incident." *In re

Fairbairn*, 802 N.W.2d 734, 743 (Minn. 2011). And as relevant to harm, Baird's "client

neglect undermines the public's confidence in the legal profession, harming both the public

and the profession." *Matson*, 889 N.W.2d at 24. The record shows a multi-year pattern of

"incompetence and mishandling and neglect of client matters . . . and other repeated

violations of [Baird's] duty to his clients and the public." *Kaszynski*, 620 N.W.2d at 713.

Moreover, in all three of his disbarments, the North Dakota Supreme Court found only

aggravating factors and no mitigating factors.[9] We have disbarred attorneys for neglect of

---

[9]     Across all four of its proceedings, the North Dakota Supreme Court found as aggravating factors a pattern of misconduct; multiple offenses; vulnerability of the victims; prior discipline history; and a demonstrated indifference to making resolution. Minnesota considers many of these to be aggravating factors as well. *See In re Nwaneri*, 978 N.W.2d 878, 890 (Minn. 2022), *reinstatement granted*, 982 N.W.2d 402 (Minn. 2022) ("Individuals with uncertain legal status in this country facing removal or deportation are particularly vulnerable and that vulnerability can be an aggravating factor." (citing *Fru*, 829 N.W.2d at 379)); *In re Udeani*, 945 N.W.2d 389, 396 (Minn. 2020) (noting that a history of prior discipline, similarity of current misconduct to previous misconduct, vulnerability of clients, an indifference to making restitution, and failure to cooperate with the disciplinary proceedings in front of this court are aggravating factors). However, we are precluded from double-counting "the same acts . . . as both additional misconduct and an aggravating factor." *In re Taplin*, 837 N.W.2d 306, 313 (Minn. 2013). Because we considered the existence of multiple offenses as contributing to the cumulative weight of his violations, we do not consider that an aggravating factor in Baird's case.
        The only findings of mitigating factors were in Baird's suspension case, where the court noted the "imposition of other penalties and sanctions and remoteness of prior

18

several client matters when there are no mitigating circumstances. *See In re Braggans*, 280 N.W.2d 34, 35 (Minn. 1979) (disbarring an attorney for "inexcusable neglect" of his clients' matters and where he "presented no facts or arguments by way of mitigation which would justify a further delay in imposing the sanction of disbarment").

Our precedent indicates that disbarment in this case is not substantially different than what we have done with past instances of grievous client neglect and misrepresentation to vulnerable clients who are subject to immigration proceedings or bankruptcy. We therefore conclude that disbarment is not substantially different from the discipline that is warranted in Minnesota for Baird's misconduct.

## CONCLUSION

For the foregoing reasons, we hold that reciprocal discipline in the form of disbarment is appropriate. We order that Stephen J. Baird is disbarred from the practice of law in the State of Minnesota, effective upon the date of this opinion. Baird must comply with Rule 26, RLPR (requiring notice to clients, opposing counsel, and tribunals), and must pay to the Director the sum of $900 in costs and disbursements pursuant to Rule 24, RLPR. Consistent with his discipline in North Dakota, Baird will not be eligible for reinstatement to the practice of law in Minnesota until he is eligible for reinstatement in North Dakota no sooner than five years from the date of his most recent disbarment in North Dakota.

Disbarred.

---

offenses" constituted mitigating factors. *Baird III*, 994 N.W.2d at 379. These are not generally considered mitigating factors in Minnesota.